**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DENNIS DILL,

    Plaintiff-Appellant and
    Cross-Appellee,

v.

CITY OF EDMOND, OKLAHOMA and
BILL VETTER, in his individual capacity,

    Defendants-Appellees and
    Cross-Appellants,

  and

TERRY GREGG, in his official and
individual capacities; DAVID PRESTON,
in his official and individual capacities;
and BEN DAVES, in his official and
individual capacities,

    Defendants-Appellees.

Nos. 97-6110, 97-6122

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CV-95)

---

Joseph R. Weeks of Oklahoma City, Oklahoma, for Plaintiff-Appellant and Cross-Appellee Dennis Dill.

Richard J. Goralewicz (Robert J. Turner of Turner, Turner, Braun & Goralewicz; Robert S. Baker and Hugh A. Manning of Baker, Baker & Tait, Oklahoma City, Oklahoma; and

Stephen T. Murdock, City Attorney for the City of Edmond, Oklahoma, with him on the brief), of Turner, Turner, Braun & Goralewicz, Oklahoma City, Oklahoma, for Defendants-Appellees and Cross-Appellants City of Edmond, Oklahoma and Bill Vetter.

Richard Hornbeek of Hornbeek, Krahl & Vitali, Oklahoma City, Oklahoma, for Defendant-Appellee Terry Gregg.

Before **BALDOCK**, **McKAY**, and **KELLY**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Plaintiff Dennis Dill, a police officer employed by the City of Edmond, Oklahoma, brought suit against Defendants pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First Amendment free speech and Fourteenth Amendment due process rights. Plaintiff also brought several pendent state law claims. The district court bifurcated this case for trial because Plaintiffs failed to make a timely jury demand for his claims against Defendants Terry Gregg, Bill Vetter and the City of Edmond. The claims against Defendants Ben Daves and David Preston were tried before a jury, while the claims against Gregg, Vetter and the city were tried before the court. Ultimately, the court determined that Plaintiff should prevail against Vetter and the City of Edmond on the procedural due process claim and against the City of Edmond on the breach of contract claim. The court awarded nominal damages of one dollar on each claim. Defendants prevailed on all of Plaintiff's remaining claims before the court and the jury.

On appeal, Plaintiff argues that the district court: (1) erred in dismissing his First

2

Amendment free speech claim against Gregg, Vetter and the City of Edmond; (2) erred in granting Preston and Daves' motion for judgment as a matter of law; (3) erred in denying his motion for a jury trial; (4) erred in conducting separate trials; (5) erred in awarding nominal damages; (6) erred in two of its conclusions of law; and (7) abused its discretion by quashing the trial subpoena of Dr. Fred Jordan.

In their cross-appeal, Defendants City of Edmond and Vetter argue that the district court erred by (1) finding that Vetter was a "policymaker"; and (2) denying Vetter qualified immunity for the procedural due process claim. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

In July 1991, the bodies of Melody Wuertz and her infant daughter Jessica were discovered in their home. Plaintiff, a detective with the Edmond police department, was assigned to the case. Jimmy Ray Slaughter, Jessica's father, was quickly identified as a suspect and was subsequently convicted of the murders. Two days after the discovery of the bodies, Plaintiff asked his immediate supervisor, Lieutenant Terry Gregg, to allow him to leave for a previously scheduled vacation during the Fourth of July weekend. As a result, Plaintiff was absent for three or four days of the investigation. When he returned, he worked on the case for another five weeks before the case was referred to a multi-district task force. As a result of his investigation, Plaintiff had serious doubts that Slaughter was the murderer, and he became convinced that Jessica was killed sometime

3

between 12 midnight and 2:00 a.m. on July 2. Plaintiff's theory was apparently in conflict with autopsy results which placed the time of death between 10 a.m. and noon on July 2. Establishing the time of death was very important in this case because two witnesses placed Slaughter near the Wuertz residence around noon on July 2, 1991. Plaintiff brought his theory to the attention of other officers and his supervisors and was told not to pursue it further because it might "muddy the water."

Plaintiff claims that in late May 1992, Detective Theresa Pfeiffer approached him and asked him to write a police report regarding the Wuertz case including facts he knew to be false.[1] Plaintiff refused to comply and within a month was transferred from detective to patrol officer. Following Plaintiff's June 1992 transfer, he continued to receive the same base salary, but was no longer eligible for the $50.00 per month "special duty pay" detectives receive.

In December 1992, Plaintiff wrote a letter to then Chief of Police Bill Vetter stating that Plaintiff was aware of exculpatory evidence in the Slaughter case which he wanted to bring to the attention of the district attorney. Two months after Plaintiff wrote this letter, Daves, a captain in the patrol division, changed Plaintiff's days off from

---

[1] According to Plaintiff, Pfeiffer asked him to write a report stating that Plaintiff had found a container in the Wuertz residence containing noodles, peas and carrots. These items were found in Jessica's digestive tract. A container with these food items in the Wuertz residence would support the theory that the deaths occurred between 10 a.m. and noon on July 2. Plaintiff testified that Pfeiffer told him that Gregg told her that Plaintiff had found such a container. Plaintiff also testified that no such container existed.

4

Saturday and Sunday to Friday and Saturday. In October 1993, Plaintiff was reassigned to the detective division. Since his reassignment he has not been assigned to any homicide investigations.

On January 20, 1995, Plaintiff filed his original complaint against the City of Edmond, Gregg, and Vetter. On November 2, 1995, the district court dismissed Plaintiff's First Amendment claim against the city, Gregg and Vetter. On June 20, 1996, Plaintiff filed an amended complaint adding due process, tortious interference with business relations, and conspiracy claims against officers Preston and Daves.

In December 1996, the district court conducted a bench trial of Plaintiff's claims against the City of Edmond, Vetter and Gregg for Fourteenth Amendment due process violations, breach of contract, civil conspiracy, and tortious interference with business relations. A few weeks later, the claims against Defendants Daves and Preston were tried to a jury. At the close of Plaintiff's case, the district court took the case from the jury and granted Defendants' motion for judgment as a matter of law. On March 4, 1997, the district court filed findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a), and entered judgment on the claims against Defendants Gregg, Vetter and the City of Edmond as follows. The district court entered judgment on the due process claim in favor of Plaintiff and against the City of Edmond and Vetter and awarded damages in the amount of $1.00. On the breach of contract claim, judgment was granted in favor of Plaintiff and against the City of Edmond, and damages of $1.00 were

5

awarded. The district court entered judgment against Plaintiff and in favor of Defendants on the remaining claims.

## II. First Amendment

Plaintiff alleges that Defendants Vetter, Gregg and the City of Edmond violated his First Amendment free speech rights by retaliating against him after he attempted to bring exculpatory facts regarding the Wuertz homicides to light. The district court dismissed the claim on the basis that Plaintiff's speech was not constitutionally protected and, in the alternative, that Defendants Gregg and Vetter were entitled to qualified immunity.[2] Plaintiff argues that the district court erred in doing so. We review de novo the district court's dismissal for failure to state a claim upon which relief may be granted. Pelt v. State of Utah, 104 F.3d 1534, 1540 (10th Cir. 1996). Under Fed. R. Civ. P. 12(b)(6), dismissal is inappropriate unless Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Id. In conducting our review, we accept all factual allegations in the complaint as true. Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995).

A government employer cannot "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). Thus, a public employer cannot retaliate

---

[2] Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. The district court ruled on the motion to dismiss and did not consider matters outside the pleadings.

6

against an employee for exercising his constitutionally protected right of free speech. Id. at 146-47. We analyze Plaintiff's free speech claim using the four-step analysis derived from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick. See Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996). First, we must determine whether the employee's speech involves a matter of public concern. Connick, 461 U.S. at 146. If so, we then balance the employee's interest in commenting upon matters of public concern "against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. Speech is protected if the employee's interest outweighs the interest of the employer. Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998). If this balance tips in favor of the employee, the employee then must show that the speech was a "substantial factor or a motivating factor in the detrimental employment decision." Gardetto, 100 F.3d at 811. Finally, if Plaintiff makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. Id. The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. Id. The second two steps concern causation and involve questions of fact. Id.

In his complaint, Plaintiff alleges that because of his comments about the Wuertz investigation, Defendants transferred him to the patrol division and denied him weekends off. Plaintiff argues that these actions violated his First Amendment rights. In their

7

motion to dismiss, Defendants argued that Plaintiff's speech was not constitutionally protected. The district court agreed, concluding that, although Plaintiff's speech involved a matter of public concern, Plaintiff's interests did not outweigh Defendants' interest in maintaining an effective working environment. We now turn to our analysis of the district court's decision.

## A. Public Concern

Matters of public concern are those of interest to the community, whether for social, political or other reasons. Lytle, 138 F.3d at 863. Matters solely of personal interest to government employees, however, are not protected by the First Amendment. Connick, 461 U.S. at 147. Although speech related to internal personnel disputes ordinarily do not involve public concern, "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import." Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988). In assessing whether speech is protected, we must consider the "content, form and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147.

As the district court concluded, Plaintiff's statements regarding his belief that exculpatory evidence existed and was being withheld, involved a matter of public concern. In essence, Plaintiff's speech concerned possible wrongdoing by the police officers investigating the Wuertz homicides. See Conaway, 853 F.2d at 796. Thus, this case is distinguishable from Koch v. City of Hutchinson, 847 F.2d 1436 (10th Cir. 1988),

8

where we held that a fire marshal's routine report regarding the cause of a fire did not involve a matter of public concern. In Koch there was no evidence that the report was "motivated or inspired by . . . alleged improprieties or by the desire to expose those improprieties." Id. at 1448. In contrast, in this case Plaintiff's speech was motivated by his concern that potentially exculpatory evidence was not being disclosed. He continued to voice his concerns even after he was removed from the official investigation. Thus, Plaintiff's speech constituted more than a routine summary report. Furthermore, Plaintiff's motive was "not to air personal grievances or disputes with no relevance to the public interests," but to bring to light the possible mishandling of a murder investigation. See id.

Defendants argue that Plaintiff's speech was not protected because there was no evidence that Plaintiff attempted to "publish" his views. However, the fact that Plaintiff chose a private forum within the police department and the district attorney's office, rather than a public forum, does not remove the speech from First Amendment protection. See Conaway, 853 F.2d at 797. Defendants also argue that because Slaughter was ultimately convicted for the homicides, Plaintiff's allegations were false, and therefore, unprotected by the First Amendment. Although deliberately or recklessly false statements do not receive First Amendment protection, Moore v. City of Wynnewood, 57 F.3d 924, 933 (10th Cir. 1995), Defendants have not shown that Plaintiff knew or should have known his statements were false. Furthermore, Slaughter's subsequent conviction

9

does not disprove Plaintiff's statements that exculpatory evidence was withheld in this case. In light of the foregoing, we agree with the district court and conclude that Plaintiff has satisfied the threshold requirement that his speech regarding the withholding of exculpatory evidence involved matters of public concern. Accordingly, we turn to the second prong of the analysis -- balancing the parties' interests.

## B. Balancing Test

The Pickering balancing test requires a weighing of Plaintiff's interest in commenting upon matters of public concern against the "government's countervailing interest in regulating the speech to maintain an effective working environment." Moore, 57 F.3d at 933. In balancing these interests, we consider the "manner, time, and place of the employee's expression." Rankin v. McPherson, 483 U.S. 378, 388 (1987). We have held that an employee's First Amendment rights may not be restricted "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." Schalk v. Gallemore, 906 F.2d 491, 496 (10th Cir. 1990). This requires Defendants to show "actual disruption of services which results from the employee's speech." Id.; see Rankin, 483 U.S. at 388. The government cannot rely on "purely speculative allegations that certain statements caused or will cause disruption." Gardetto, 100 F.3d at 815-16.

We recognize, however, the government's strong interest in maintaining discipline and harmony among co-workers, especially where "'personal loyalty and confidence are

10

necessary.'" Moore, 57 F.3d at 934 (citing Rankin v. McPherson, 483 U.S. 378, 388 (1987)).  That interest is "particularly acute in the context of law enforcement, where there is a 'heightened interest . . . in maintaining discipline and harmony among employees.'" Moore, 57 F.3d at 934 (quoting Wulf v. City of Wichita, 883 F.2d 842, 861 (10th Cir. 1989)).  Bearing these principles in mind, we conclude that the district court prematurely dismissed Plaintiff's First Amendment claim.

The district court disposed of Plaintiff's First Amendment claim on a motion to dismiss.  At this stage of the proceedings, Defendants had not yet met their burden of showing that Plaintiff's speech disrupted the operation of the Edmond police department.  Although we have consistently given "deference to government predictions of harm used to  justify restriction of employee speech," Moore, 47 F.3d at 934 (emphasis added), Defendants neither predicted harm nor articulated specific concerns about the effects of Plaintiff's speech.   We also recognize that a government entity does not have to wait for speech "to actually disrupt . . . operations before taking action." Id.  Defendants, however, never asserted that Plaintiff's speech was disruptive or perceived as such. Instead, Defendants' motion to dismiss focused solely on whether Plaintiff's speech involved a matter of public concern.  Defendants simply did not demonstrate that the city's interest outweighs the Plaintiff's First Amendment interest in discussing possible police misconduct during a homicide investigation.  See Ramirez v. Oklahoma Dep't of

11

Mental Health, 41 F.3d 584, 595 (10th Cir. 1994).[3]  Thus, the district court erred in

concluding that the Pickering balancing could only tip in Defendants favor.[4]

Consequently, the district court erred by granting Defendants' motion to dismiss.  Our

inquiry does not end here, however, because the district court also granted the motion to

dismiss on the alternative ground of qualified immunity.  Therefore, we must consider

whether Defendants are entitled to this defense.

## C. Qualified Immunity

In granting their Fed.R.Civ.P. 12(b)(6) motion to dismiss, the district court

determined, in the alternative, that Vetter and Gregg were entitled to qualified immunity

in regard to Plaintiff's First Amendment claim.   In the context of a 12(b)(6) motion to

dismiss, our review of the qualified immunity defense is limited to the pleadings.   See

Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994).  We must construe the allegations

in the complaint and any reasonable inferences to be drawn from them, in favor of

Plaintiff.  Breidenbach v. Bolish, 126 F.3d 1288, 1292 (10th Cir. 1997).  Where a

qualified immunity defense is asserted in a 12(b)(6) motion, however, we apply a

heightened pleading standard, requiring the complaint to contain "specific, non-

conclusory allegations of fact sufficient to allow the district court to determine that those

---

[3] Confining our review to the four corners of the complaint, we express no opinion on whether Plaintiff's claims will later survive a motion for summary judgment.

[4] Although the Pickering balancing may in some circumstances be properly conducted at the 12(b)(6) stage, see Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997), this is not one of those cases.

facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." Id. at 1293. After the defense is raised, Plaintiff may amend his complaint to include additional "specific, non-conclusory allegations of fact" sufficient to allow the district court to determine whether Defendants are entitled to qualified immunity. Id. In this case, Plaintiff stood on his original complaint and the district court's grant of qualified immunity was based solely on the allegations set forth therein and the arguments raised in the parties' briefs.

Qualified immunity spares Defendants the burden of proceeding with the litigation unless Plaintiff can show that Defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We must first assess whether Plaintiff "has asserted a violation of a constitutional right." Siegert v. Gilley, 500 U.S. 226, 232 (1991). If the complaint alleges a valid claim, then we must determine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right. Albright v. Rodriguez, 51 F.3d 1531, 1534-35 (10th Cir. 1995).

We must determine whether Plaintiff's complaint sufficiently alleges facts that, if proven, would constitute a First Amendment free speech claim. We have concluded that Plaintiff's speech involved a matter of public concern and that the Pickering balancing could have tipped in Plaintiff's favor. See supra I.B. and I.C. Therefore, we must

examine the next two elements of a free speech claim, i.e., whether the speech was a "substantial or a motivating factor in the detrimental employment action" and whether Defendants have demonstrated that it would have taken the same action against Plaintiff even in the absence of the protected speech. See supra II.

Plaintiff alleges in his complaint that as a result of his repeated statements about the existence of exculpatory evidence, Defendants took detrimental employment action against him by transferring him from detective to patrol officer and denying him weekends off. Because employer action short of discharge may violate an employee's First Amendment rights, cf. Rutan v. Republican Party of Illinois, 497 U.S. 62, 72 (1990) (denial of promotions, transfers and failure to recall after layoff based on employee's political affiliation or support impermissibly infringed First Amendment rights), these allegations are sufficient to raise an inference that Defendants retaliated against Plaintiff because of his speech. Finally, viewing the facts alleged in the complaint in the light most favorable to Plaintiff, as we must, we can draw no inference of disruptive consequences arising from Plaintiff's speech, nor may we conclude that Defendants' would have taken the same action against Plaintiff in the absence of the protected speech.[5]

Because Plaintiff's complaint states a First Amendment claim, we must next

---

[5] We note that Defendants have the burden of demonstrating disruptive effects and showing that they would have taken the same action against Plaintiff even without the protected speech. See Gardetto, 100 F.3d at 811.

determine whether Defendants' conduct violated a clearly established right. Specifically, we must decide whether in June 1992, when Defendant was transferred to a less desirable position, the protected status of Plaintiff's speech was sufficiently clear that Defendants reasonably should have been on notice that their actions would violate Plaintiff's First Amendment rights. At the outset, we note that when the "fact-specific" Pickering balancing is implicated, the "law is less likely to be well established than in other cases" because it is more difficult to "clearly anticipate" the balancing of interests. Melton v. City of Oklahoma City, 879 F.2d 706, 728 (10th Cir. 1989), vacated in part, 928 F.2d 920 (10th Cir. 1991). In order to be "clearly established" the exact conduct in question does not have to have been previously declared unlawful; however, "in light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1995). We have held that in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts "must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

Plaintiff argues that when Defendants transferred Plaintiff, the law was clearly established so that Defendants should have realized that their actions would violate the First Amendment. We agree. In light of the relevant precedent, we conclude that Plaintiff's transfer and change in work schedule as alleged falls within the ambit of unconstitutional detrimental action. As early as 1986, we held that employment action

15

short of discharge may give rise to First Amendment claims. Wren v. Spurlock, 798 F.2d 1313, 1318 (10th Cir. 1986). In Wren, the plaintiff, a public school teacher, was harassed, reprimanded and suspended because of her complaints about school conditions. Prior to 1992, the Supreme Court also held that denial of promotions, transfers and other employment opportunities may give rise to First Amendment claims. Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). At issue in Rutan was whether promotions, transfers, recalls from layoffs, and hiring decisions involving public employees could be constitutionally based on political party affiliation and support. Id. at 65. State employees in Illinois claimed that because they did not support the Republican party, they suffered detrimental employment action and the Supreme Court agreed. Rutan makes clear that there are "deprivations less harsh than dismissal that nevertheless" violate a public employees' rights under the First Amendment. Id. at 75.

Furthermore, the law in other circuits was clearly established prior to 1992. The Seventh Circuit recognized that employment decisions well short of discharge could give rise to First Amendment claims. Greenberg v. Kmetko, 922 F.2d 382, 384 (7th Cir. 1991) ("We know today . . . that a series of little steps to get the goat of the speaker, including failure to invite her to a birthday party, can violate the First Amendment."); see also Click v. Copeland, 970 F.2d 106 (5th Cir. 1992) (transfer of deputies to less desirable positions in retaliation for announcing their candidacy for sheriff raised First Amendment claim); Waters v. Chaffin, 684 F.2d 833, 837 n.9 (11th Cir. 1982) (holding that demotion

16

and transfer implicate First Amendment); Bennis v. Gable, 823 F.2d 723, 731 (3rd Cir. 1987) (constitutional violation is not based on harshness of the sanction, "but in the imposition of any disciplinary action for the exercise of permissible free speech"). In light of the facts set forth in the complaint and preexisting case law, we conclude that Defendants should have known that it would be unconstitutional to transfer Plaintiff from detective to patrol officer and to alter his weekend duty schedule in retaliation for Plaintiff's speech. Accordingly, we conclude that Defendants Vetter and Gregg are not entitled to qualified immunity and the district court erred in dismissing the First Amendment claims against them.

### III. Judgment as a Matter of Law

Plaintiff next argues that the district court erred in granting Preston and Daves' motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a). We review de novo the grant of a judgment as a matter of law. Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996). In doing so, we construe the evidence and inferences in the light most favorable to the nonmoving party, and may not weigh the evidence or substitute our judgment for that of the jury. Id. We will uphold a judgment as a matter of law only if "the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." Motive Parts Warehouse v. Facet Enterprises, 774 F.2d 380, 385 (10th Cir. 1985).

Plaintiff brought the following claims against Defendants Preston and Daves: (1) a

17

42 U.S.C. § 1983 procedural due process claim, and (2) state claims for tortious interference with business relations and civil conspiracy. At the conclusion of Plaintiff's case, the district court granted Preston and Daves' motion for judgment as a matter of law.

In his amended complaint, Plaintiff alleged that Preston, the deputy police chief, and Daves, a captain in the patrol division, acting in concert with Defendants Gregg and Vetter, conspired and retaliated against him in order to cause him to resign from the department. Plaintiff also alleged that under the collective bargaining agreement with the City of Edmond, he could not be disciplined without cause and that Defendants violated his procedural due process rights by transferring and disciplining him "arbitrarily and capriciously and without just cause, and without a hearing."

A jury trial of these claims began on December 16, 1996. At the close of Plaintiff's case, the district court concluded that no reasonable jury could find from the evidence presented that Preston and Daves deprived Plaintiff of his procedural due process rights. The court also found no evidence that Preston and Daves were part of a concerted effort to either interfere with Plaintiff's employment or to retaliate against him. In the alternative, the district court concluded that Preston and Daves were entitled to qualified immunity. On appeal, Plaintiff argues that he presented ample evidence to establish that Daves and Preston cooperated with Vetter and others within the Edmond Police Department to discipline Plaintiff for his conduct regarding the Wuertz

18

investigation. Upon review of the record, we conclude that the district court properly granted judgment as a matter of law.[6]

## A. Procedural Due Process

Procedural due process claims require a two-part analysis. First, we assess whether Plaintiff's interest was protected by the Fourteenth Amendment, and if so, whether Plaintiff was afforded "an appropriate level of process." Watson v. University of Utah Medical Center, 75 F.3d 569, 577 (10th Cir. 1996). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). For this reason, a hearing of some sort is generally required before a person may be deprived of a protected interest. Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 848 (1977). Protected property interests arise, not from the Constitution, but from state statutes, regulations, city ordinances, and express or implied contracts. Anglemeyer v. Hamilton County Hosp., 58 F.3d 533, 536 (10th Cir. 1995). Such interests may be created by "rules or mutually explicit understandings that support [Plaintiff's] claim of entitlement to

---

[6] Because we affirm the district court's grant of judgment as a matter of law, we need not address Plaintiff's argument that the district court erred by trying the claims against Daves and Preston to a jury after the bench trial of the claims against the other Defendants. Plaintiff concedes that he can show no prejudice resulting from the district court's decision to conduct the bench trial first if the motion for judgment as a matter of law was properly granted.

19

the benefit." Perry v. Sindermann, 408 U.S. 593, 601 (1972).

In this case, an express contract, the collective bargaining agreement between the City of Edmond and the fraternal order of police, gave rise to a protected property interest in Plaintiff's continued employment. The agreement provided that management could only discharge, demote or discipline employees "for cause."[7] Thus, Plaintiff had a protected property interest in not being disciplined without cause.

Plaintiff testified that in December 1992 he wrote a letter to Chief Vetter expressing concern about exculpatory evidence being withheld in the Wuertz case. Two months later, Plaintiff informed Daves that he planned to take the Law School Admissions Test and would be studying for the test on Sundays. Within two weeks of this conversation, Plaintiff's duty schedule was changed so that he no longer had Sundays off. Prior to this time, Plaintiff had weekends off because of his seniority within the department. Plaintiff also offered evidence that Daves attempted to dissuade another officer, April McBain, from trading days off with Plaintiff so that he could continue to have Sundays off. It's uncontroverted that Daves, as captain in charge of the patrol division, changed Plaintiff's duty schedule.

Viewing this evidence in the light most favorable to Plaintiff, we conclude that Plaintiff's procedural due process claim against Daves fails. Not all property interests

---

[7] Specifically, the collective bargaining agreement states that management may "discipline, demote, and discharge employees for cause, subject to the grievance procedure rights set out herein in Article 9 [of the collective bargaining agreement]."

20

deserve constitutional protection. Courts have long recognized that *de minimus* property interests do not trigger procedural due process protections. See Goss v. Lopez, 419 U.S. 565, 575 (1975) (holding that 10-day suspension from school triggered procedural due process because it was not *de minimus*); Fuentes v. Shevin, 407 U.S. 67, 90 n.21 (1972) (acknowledging that some form of notice and hearing is required before deprivation of property interest that "'cannot be characterized as *de minimus'") (quoting Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342 (1969) (Harlan, J., concurring); Versarge v. Township of Clinton, New Jersey, 984 F.2d 1359, 1370 (1993) ("requirements of due process do not apply when the property interest involved is '*de minimus'").* We have applied this principle to trivial infringements upon property interests. See Pitts v. Board of Educ. of U.S.D. 305, 869 F.2d 555, 556 (10th Cir. 1989) (holding that two-day suspension with pay does not deprive an employee of any "measurable property interest"). Furthermore, other circuits have found employer action of similar consequence to be *de minimus*. See Sewell v. Jefferson County Fiscal Court, 863 F.2d 461, 467 (6th Cir. 1988) (no due process violation where Plaintiff was demoted without a hearing but subsequently reinstated with full back pay); Carter v. Western Reserve Psychiatric Habilation Center, 767 F.2d 270, 272 n.2 (6th Cir. 1985) (routine disciplinary two-day suspension without pay was *de minimus* and not deserving of due process protection); Hardiman v. Jefferson County Board of Educ., 709 F.2d 635, 638 (11th Cir. 1983) (one-week suspension with pay was *de minimus* and did not trigger procedural due process). Applying this authority,

21

we conclude that the change in Plaintiff's duty schedule constitutes *de minimus* action. The inconvenience that resulted in the change was inconsequential and brief. Plaintiff was able to trade schedules with another officer in order to continue to have weekends off. "While the rescheduling may have inconvenienced him and defeated an expectation interest, such is not the stuff of constitutional torts." Altman v. Hurst, 734 F.2d 1240, 1242 (7th Cir. 1984). Because the change in Plaintiff's duty schedule was *de minimus,* the change did not trigger procedural due process protections. Consequently, the district court properly granted judgment as a matter of law.

We also conclude that the district court did not err in granting the motion for judgment as a matter of law in regard to Preston. The only evidence offered to connect Preston to the alleged disciplinary actions taken against Plaintiff was a conversation with Plaintiff shortly after he was notified of his transfer from detective to the patrol division. Plaintiff testified that Preston told him that he could not speak with Chief Vetter about his transfer, threatening him with an insubordination charge if he tried to do so, and told him that he did not have a grievance because the transfer was not disciplinary. Plaintiff presented no evidence that Preston personally participated in the decision to transfer Plaintiff. Consequently, the district court properly granted Preston judgment as a matter of law in regard to the procedural due process claim.

### B. Tortious Interference with Business Relations

Plaintiff alleged that Daves and Preston tortiously interfered with his employment

22

relationship with the Edmond Police Department by "act[ing] to demote and discipline" him. In order to recover for a state law claim for tortious interference with business relations, Plaintiff must prove: (1) that he had a contractual right that was interfered with; (2) that such interference was malicious or wrongful and was not justified, privileged or excusable; and (3) that damages resulted from the interference. Navistar Int'l Transp. Corp. v. Vernon Klein Truck & Equipment, 919 P.2d 443, 446 (Okla. App. 1994). After reviewing the record, we conclude that the district court did not err in granting judgment as a matter of law as to this claim. Plaintiff presented no evidence that he had a contractual right to a certain work schedule or work assignment. Although the collective bargaining agreement provides that seniority is a "factor" to be considered when scheduling regular days off, seniority is not the sole or determinative factor. The collective bargaining agreement explicitly reserved to management the right to "establish or change work schedules" and to "establish, change, combine or discontinue duty positions and assign employees thereto . . . ." Thus, Plaintiff failed to establish the first element of a prima facie case of tortious interference with business relations and Preston and Daves were entitled to judgment as a matter of law.

## C. Civil Conspiracy

Plaintiff next alleges that Preston and Daves conspired with Defendants Gregg and Vetter to "demote and discipline Plaintiff and to otherwise attempt to cause him to resign." In order to succeed on his state law civil conspiracy claim, Plaintiff must show

23

that two or more persons acted in concert to accomplish an unlawful objective. Wright v. Cies, 648 P.2d 51, 53 n. 2 (Okla. App. 1982). The evidence of the conspiracy must be "clear and convincing" and must do more than raise suspicion. Dill v. Rader, 583 P.2d 496, 499 (Okla. 1978). Circumstances which are just as consistent with lawful purposes as with unlawful purposes are insufficient to establish a conspiracy. Id.

Under this stringent standard, Plaintiff has failed to establish a civil conspiracy. Personnel actions such as a transfer or change in duty schedule are just as consistent with a lawful as an unlawful purpose. See Rader, 538 P.2d at 500 (finding no conspiracy where investigation of officer and his demotion were consistent with lawful as well as alleged unlawful scheme). Plaintiff simply failed to meet his burden of establishing by clear and convincing evidence that Defendants Preston and Daves participated in a conspiracy to demote or discipline him.

## IV. Denial of Rule 39(b) motion

Plaintiff challenges the district court's denial of his Fed. R. Civ. P. 39(b) motion for a jury trial. Rule 39(b) provides that the district court, in its discretion, may order a trial by jury "notwithstanding the failure of a party to demand a jury." Fed. R. Civ. P. 39(b). In the present case, it is undisputed that Plaintiff failed to make a timely Rule 38 demand for a jury trial of his claims against the City of Edmond, Vetter and Gregg. See Fed. R. Civ. P. 38(b). On June 20, 1996, Plaintiff filed a jury demand and an amended complaint which added claims against two additional defendants, Preston and Daves.

24

Plaintiff does not now contend that this jury demand, which was timely as to Preston and Daves, entitled him to a jury trial as to the original Defendants. A few days later, Plaintiff filed a Rule 39 motion requesting a jury trial of all his claims against all of Defendants. The district court denied the motion.

We have previously held that the district court does not abuse its discretion by denying a Rule 39(b) motion when the "failure to make a timely jury demand results from nothing more than the mere inadvertence of the moving party." Nissan Motor Corp. v. Burciaga, 982 F.2d 408, 409 (10th Cir. 1992). Here, Plaintiff offers no excuse for his untimely request for a jury trial, made almost a year and a half after the original complaint was filed. Plaintiff has made no attempt to demonstrate that his untimely jury demand was due to anything other than inadvertence or oversight. Accordingly, we conclude that the district court's denial of the Rule 39(b) motion was not an abuse of discretion.

## V. Damages

After a bench trial, the district court awarded Plaintiff $1 in damages for his procedural due process claim against Vetter and the City of Edmond and $1 in damages for his breach of contract claim against the City of Edmond. Plaintiff argues that the district court erred by awarding only nominal damages. We review the amount of damages awarded by the district court for clear error, Deasy v. United States, 99 F.3d 354, 359 (10th Cir. 1996), and questions of law de novo. Burlington Northern R.R. v. Huddleston, 94 F.3d 1413, 1416 (10th Cir. 1996).

25

The district court found that Vetter[15] and the City of Edmond violated Plaintiff's procedural due process rights when Plaintiff was transferred from detective to patrol officer. The district court also concluded that the City of Edmond breached the collective bargaining agreement by disciplining Plaintiff, via the transfer, without cause. The district court then determined that Plaintiff had not proven any actual harm arising from these claims and awarded Plaintiff nominal damages.

Section 1983 damage awards compensate individuals for the deprivation of constitutional rights. Farrar v. Hobby, 506 U.S. 103, 112 (1992). Thus, no compensatory damages may be awarded absent evidence of actual injury. Id. In the absence of actual injury, however, nominal damages may be awarded for procedural due process violations. Id. Even if Plaintiff can prove actual injury, no compensatory damages may be awarded where the procedures were deficient, but the actual injuries were caused by a justified deprivation of a property interest. Carey v. Piphus, 435 U.S. 247, 263 (1978). That is to say, if the deprivation, in this case the transfer, would have occurred anyway, and the lack of due process itself did not cause any injury, then Plaintiff may recover only nominal damages. Zinermon v. Burch, 494 U.S. 113, 126 n.11 (1990).

Applying these principles, we conclude that the district court erred in awarding

---

[15]As discussed in Part VIII of this opinion, Vetter is not individually liable for the constitutional violation because he is entitled to qualified immunity. This does not, however, affect the liability of the City of Edmond. Therefore, Plaintiff's appeal of the damage award is not moot.

nominal damages.   Plaintiff's uncontroverted testimony established that as a result of his transfer, he lost $2,000 in overtime and special duty pay.   Thus, evidence in the record supports an award of compensatory damages.   Furthermore, Defendants did not show that under Carey Plaintiff was precluded from receiving compensatory damages arising from his transfer.   Defendants did not establish that Plaintiff's transfer would have occurred even if Plaintiff had been afforded the procedures outlined in the collective bargaining agreement.   Thus, Plaintiff's recovery was not limited to nominal damages. See Carey, 435 U.S. at 260.

We conclude, however, that the district court correctly refused to award damages for emotional distress.   Regarding his emotional and mental state, Plaintiff testified that the transfer was "very upsetting" and everything he worked for "was taken away."  He also testified that some officers would not associate with him because of his transfer. Plaintiff pointed to no other evidence in the record to support his claim of emotional distress.   Plaintiff's uncorroborated testimony of his emotional or mental state is insufficient to prove emotional distress.   Koopman v.  Water Dist.  No.  1 of Johnson County, Kan., 41 F.3d 1417, 1420 (10th Cir.  1994).   In light of the foregoing analysis, we remand to the district court for determination of damages consistent with this opinion.

## VI. District Court's Conclusions of Law

Plaintiff also asserts that two of the district court's conclusions of law constitute error.  We review the district court's conclusions of law de novo.  Bill's Coal Co. v.

27

Board of Public Utilities, 887 F.2d 242, 244 (10th Cir. 1989).

First, Plaintiff argues that the district court erred in concluding that Plaintiff failed to establish his state law claim against Vetter for tortious interference with business relations. In order to succeed on this claim, Plaintiff had the burden of proving: (1) that he had a contractual right that was interfered with; (2) that such interference was malicious or wrongful and was not justified, privileged or excusable; and (3) that damages resulted from the interference. Navistar Int'l Transp. Corp. v. Vernon Klein Truck & Equipment, 919 P.2d 443, 446 (Okla. App. 1994). The district court concluded that Plaintiff failed to establish a tortious interference with business relations claim against Vetter because Plaintiff failed to prove the second element, i.e., that he was transferred for an improper purpose without justification, privilege or excuse. Plaintiff had the burden of establishing this element of his prima facie case, see Navistar, 919 F.2d at 446, and he failed to do so. Plaintiff assumes that because the district court concluded that his transfer was for a disciplinary purpose, the transfer was necessarily wrongful and without justification. The district court's determination that his transfer was disciplinary was relevant to whether Plaintiff had a protected property interest arising from the collective bargaining agreement. The district court concluded that the collective bargaining agreement prevented Defendants from disciplining Plaintiff without cause and that this portion of the agreement gave rise to a protected property interest. Thus, the district court determined that transferring Plaintiff without a pre-deprivation hearing was

28

wrongful, <u>not</u> that the transfer itself was wrongful. Even assuming that the transfer was wrongful, Plaintiff did not prove that Defendants had no justifiable reason to transfer him. The record contained evidence that Plaintiff was transferred because of his request to go on a planned vacation during the early part of the murder investigation. Plaintiff did not refute that this was a legitimate, justifiable reason for transferring him. Consequently, he failed to establish a tortious interference claim against Vetter.

Second, Plaintiff argues that the district court erred in concluding that he was not entitled to punitive damages. We disagree. The district court correctly noted that municipalities are not liable for punitive damages under § 1983. <u>Butcher v. City of McAlester</u>, 956 F.2d 973, 976 n.1 (10th Cir. 1992). Thus, if Plaintiff is to recover punitive damages, it must be against an individual defendant. We have concluded that Plaintiff failed to establish his claims against Vetter or any of the other individual Defendants. <u>See</u> <u>supra</u> Part III and <u>infra</u> Part VIII. Consequently, Plaintiff is not entitled to a punitive damage award.

## VII. Trial subpoena

Finally, Plaintiff argues that the district court erred in quashing the trial subpoena of Dr. Fred Jordan, Oklahoma's chief medical examiner. We review an order quashing a subpoena for abuse of discretion. <u>Gulley v. Orr</u>, 905 F.2d 1383, 1386 (10th Cir. 1990). Upon careful review of the record on appeal, we determine that the district court did not abuse its discretion by quashing the subpoena.

29

## VIII. Defendants' Cross-Appeal

Following a bench trial of the claims against Vetter, Gregg and the City of Edmond, the district court entered judgment against Defendants Vetter and the City of Edmond on Plaintiff's procedural due process claim and granted judgment in favor of Plaintiff and against the City of Edmond on the breach of contract claim. All other claims were resolved in Defendants' favor. In their cross-appeal, Defendants Vetter and the City of Edmond raise two issues. First, they argue that the district court erred in holding the City of Edmond liable for the procedural due process violation because Chief Vetter was not a final policymaker. Second, they argue that the district court erred in denying Vetter's qualified immunity defense. We address each issue below.

### A. Municipal Liability

The district court concluded that the City of Edmond was liable for the due process violation arising from Vetter's transfer of Plaintiff from detective to patrol officer because Vetter had final policymaking authority. Defendants argue that the members of the city council and to a limited extent, the city manager, were the only officials in the City of Edmond with final policymaking authority. Whether an individual is a final policymaker for purposes of § 1983 liability "is a legal issue to be determined by the court based on state and local law." Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995). Accordingly, we review the district court's conclusion de novo. Bill's Coal Co., 887 F.2d at 244.

30

To establish the liability of the City of Edmond, plaintiff cannot rely upon the theory of respondeat superior.  Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978).  Plaintiff must show that the city's policies caused the constitutional violation. McMillian v. Monroe County, Ala., 117 S.Ct. 1734, 1736 (1997).   Where a city official "responsible for establishing final policy with respect to the subject matter in question" makes a "deliberate choice to follow a course of action . . . from among various alternatives," municipal liability attaches to that decision.  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  Municipal liability arises even if the official's decision is specific to a particular situation.  Randle, 69 F.3d at 447.   Vetter's status as a final policymaker turns on whether he had the authority to establish official city policy on employee transfers and discipline within the police department.  See McMillian, 117 S.Ct. at 1737 (courts must determine whether officials are policymakers for the municipality "in a particular area, or on a particular issue").   In making this determination, we consider whether (1) the official's discretionary decisions are "constrained by general policies enacted by others;" (2) the decisions are reviewable by others; and (3) the decisions were within the official's authority.  Randle, 69 F.3d at 448.  Applying these factors, we conclude that the district court properly found that Vetter had final policymaking authority.

Our analysis begins with a review of relevant Oklahoma law, including city ordinances and regulations, to determine which officials had responsibility for setting

31

policy in the relevant area of city business.  See Melton, 879 F.2d at 724.  The portion of the city charter contained in the record does not designate responsibility for city employment decisions such as transfers and discipline.  The charter does state that the city manager is the "administrative head of the municipal government, under the direction and supervision of the mayor and council."  The Edmond Municipal Code expands on the role of the city manager, stating that the manager has authority to "appoint and to remove at pleasure all directors and heads of departments and all subordinate officers and employees in such departments . . . ."  The code also provides that the city manager has direct responsibility for the department of police services and that this department is "headed by the Police Chief."  Neither the code nor the charter limits policymaking authority to the mayor or the city council.  Although the code states that the city manager has the authority to hire and discharge employees, the regulations do not speak directly as to who has authority to determine policy regarding employee transfers and discipline.  In light of the city's charter and code, and the other evidence presented at trial and discussed below, we conclude that Vetter was a final policymaker in regard to police department personnel transfers.

The testimony indicated that Plaintiff's transfer occurred pursuant to a policy adopted by Chief Vetter whereby senior detectives were transferred to the patrol division to determine whether they were management material.  Furthermore, Chief Vetter's decision to transfer Plaintiff was not the type of decision generally reviewed by the city

manager. The city manager testified that although discipline, discharge and demotion are subject to his approval, he would not approve transfers.[16] Finally, the decision to transfer Plaintiff fell within Vetter's authority as police chief. Vetter testified that he had authority to establish police department policies including those regarding officer transfers. In addition, a police department procedure regarding transfers stated that the "chief of police shall have the discretion to transfer any member from one organic unit, section, or division to another for the best interest of the department or for corrective purposes as a result of disciplinary action." Consequently, we conclude that the district court properly determined that Vetter had final policymaking authority in this area.

## B. Qualified Immunity

Defendants argue that the district court erred in denying Vetter qualified immunity. Our analysis of the qualified immunity defense is two-pronged. First, we must determine whether Plaintiff asserted the violation of a constitutional right. Siegert, 500 U.S. at 232. Second, we must determine whether that right was clearly established such that reasonable officials would have understood that their conduct violated that right. Albright, 51 F.3d at 1534-35. Defendants do not argue that Plaintiff failed to assert a

---

[16]Chief Vetter testified that he determined, with the approval of the city manager, to transfer Plaintiff. The testimony of the city manager, however, conflicts with this testimony. We give the district court's determinations regarding the credibility of witnesses great deference. LDL Research & Dev. II, Ltd. v. C.I.R., 124 F.3d 1338, 1344 (10th Cir. 1997). Based on our review of the record, we cannot conclude that the district court's credibility determinations were clearly erroneous.

procedural due process violation. Instead, they argue that in 1993 the law was not clearly established. Thus, our inquiry is limited to the second-prong of the analysis.

In order to be "clearly established" the exact conduct in question does not have to have been previously declared unlawful; however, "in light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640. We must determine whether a reasonable officer in Vetter's position should have known that by transferring Plaintiff without any procedural protections, he would violate Plaintiff's due process rights.

Plaintiff argues that in 1993, when Vetter transferred Plaintiff, the law was clearly established. We disagree. Although we held in 1995 that an employee was entitled to procedural due process if a statutory or contract provision established a property interest in retaining the same position, Plaintiff was transferred two years earlier, in 1993. See Anglemeyer, 58 F.3d at 539. Plaintiff did not cite and we could find no earlier case law holding that under Oklahoma law an employee has a right to procedural due process prior to a transfer or reassignment. Indeed, Oklahoma courts have previously held that a reassignment, even with a corresponding reduction in salary and benefits, did not deprive an employee of a protected property interest. See Childers v. Indep. School Dist. No. 1 of Bryan County, 676 F.2d 1338, 1341 (10th Cir. 1982). Thus, in 1993, the law was not clearly established and a reasonable officer in Vetter's position would not have known that by transferring Plaintiff without a hearing, Plaintiff's constitutional rights would be

34

violated.   Therefore, the district court erred in denying Vetter qualified immunity.

This does not end our inquiry, however.   We must determine the effect of Vetter's qualified immunity on the City of Edmond's liability.   The defense of qualified immunity does not always shelter a municipality from liability.   See Medina, 960 F.2d at 1499-1500.   In cases such as this, where the law was not clearly established, "there is nothing anomalous about allowing such a suit [against the municipality] to proceed when immunity shields the individual defendants."   Watson v.  City of Kansas City, Kan., 857 F.2d 690, 697 (10th Cir.  1988); see also Wilson v.  Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996).   Although qualified immunity protects a government official "who violates the constitution . . . if his or her actions were reasonable in light of clearly established law . . ., municipalities enjoy no such shield."   Watson, 857 F.2d at 697.   In contrast, where qualified immunity is based upon a finding that the officer's conduct did not amount to a constitutional violation, a municipality is relieved from liability.   Hinton v.  City of Elwood, 997 F.2d 774, 783 (10th Cir.  1993).   In this case, because Vetter's qualified immunity was predicated on the basis that the law was not clearly established, qualified immunity does not shield the City of Edmond.   Thus, the district court properly entered judgment against the City of Edmond.

## IX.  Conclusion

In summary, we reverse the district court's dismissal of Plaintiff's First Amendment claim against Defendants Gregg, Vetter and the City of Edmond.  We also

35

reverse the district court's finding that Vetter was not entitled to qualified immunity on the procedural due process claim and remand for an entry of judgment in his favor on this claim. Finally, we reverse the district court's award of nominal damages against the City of Edmond and remand for a calculation of damages consistent with this opinion. We affirm the district court in all other respects.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.