F I L E D
United States Court of Appeals
Tenth Circuit

APR 16 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEIGH-ANNE BURLEY,

      Plaintiff - Appellant,

v.

WYOMING DEPARTMENT OF
FAMILY SERVICES; CAROLYN
YEAMAN,

      Defendants - Appellees.

No. 02-8057
(D.C. No. 02-CV-01-J)
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.

Plaintiff Leigh-Anne Burley appeals from an order in the United States District

Court for the District of Wyoming granting the Fed. R. Civ. P. 12(b)(6) motion to dismiss

filed by Defendants Wyoming Department of Family Services (DFS) and Carolyn

Yeaman. Based on the First Amendment and 42 U.S.C. § 1983, Plaintiff claimed she was

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

unlawfully terminated because of her work-related speech. Arguing her statement was made in private, Defendants successfully obtained a dismissal. On appeal, Ms. Burley urges the district court erred because her speech was a matter of public concern, and, therefore, constitutionally protected. We affirm the district court.

On April 10, 2000, Plaintiff began working at DFS as a social service aid. About two months later, she was promoted to case work specialist. Plaintiff's formal evaluation at DFS did not cite any problems with her performance.

As a case worker, Plaintiff worked with family members after DFS had removed children from their parents due to abuse or neglect. Plaintiff was the first contact, or "front line," worker responsible for an individual family or child matter. She also participated in "Multidisciplinary Team Meetings," where participants discussed the situations of a family or children, the progress in reuniting a family, and other issues regarding DFS supervision and control.

Representatives of the Laramie County District Attorney's Office (D.A.) have assumed a role in this process. When a case worker's treatment of a case contradicted the District Attorney's opinion of the proper disposition, the prosecutors interjected themselves into discussions between DFS employees and their supervisors. As a result, conflict frequently arose between the agencies over particular cases.

In March 2001, Plaintiff was assigned to the "W case," in which the State had removed children from their single mother. On or around March 6, 2001, Plaintiff

attended a Multidisciplinary Team Meeting on the W case and voiced her opinion that the children and their mother should soon be reunited. She also stated she would testify in favor of family reunification at an impending court hearing about the W case.

Plaintiff's opinions stood in sharp contrast with those of the guardian at litem and representative of the D.A.'s office. At the March 6 meeting, the guardian at litem and a D.A. representative spoke with Plaintiff's supervisor, Ms. Yeaman, to express their unhappiness with Plaintiff's position in the W case. Ms. Yeaman informed Plaintiff of the disagreement, and, in discussing her forthcoming court testimony, asked whether she planned to "take the side of the District Attorney." Plaintiff told Ms. Yeaman she would testify truthfully at the hearing and would opine that the W family should be reunited when the mother achieved some measure of economic stability. Ms. Yeaman then stated she would attempt to prevent the testimony and terminated Plaintiff.

Plaintiff brought this action. On June 7, 2002, without a hearing, the district court granted Defendants' motion to dismiss, ruling Plaintiff's statements were not a matter of public concern. This appeal timely followed.

We review de novo a district court's dismissal for failure to state a claim upon which relief may be granted. ***Dill v. City of Edmond***, 155 F.2d 1193, 1201 (10th Cir. 1998). Under Fed. R. Civ. P. 12(b)(6), dismissal is inappropriate unless a plaintiff can prove no set of facts in support of her claims that would entitle her to relief. ***Id.*** We accept all factual allegations in the complaint as true. ***Id.***

Our review is heightened in First Amendment cases. We have "an obligation to make an independent examination of the whole record in order to make sure that [our] judgment does not constitute a forbidden intrusion on the field of free expression." ***Koch v. City of Hutchinson***, 847 F.2d 1436, 1441 (10th Cir. 1988) (en banc) (internal quotations omitted).

We have articulated a four-part test to determine whether a public employee has advanced a First Amendment claim against a public employer. In ***Dill***, 155 F.3d at 1201-02, we stated:

> A government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. Thus, a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech. We analyze Plaintiff's free speech claim using the four-step analysis derived from *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick* [*Connick v. Myers*, 461 U.S. 138 (1983)]. First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Speech is protected if the employee's interest outweighs the interest of the employer. If this balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Finally, if Plaintiff makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. The second two steps concern causation and involve questions of fact.

(internal citations and quotations omitted).

To determine the threshold issue of whether an employee's speech addressed a matter of public concern, we look at the content, form, and context of a given statement as revealed by the contents of the record. *Connick v. Myers*, 461 U.S. 138, 142 (1983). Further, as we stated in *Dill*,

> [m]atters of public concern are those of interest to the community, whether for social, political or other reasons. Matters solely of personal interest to government employees, however, are not protected by the First Amendment. Although speech related to internal personnel disputes ordinarily does not involve public concern, speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import.

155 F.3d at 1202 (internal citations and quotations omitted).

The mere fact a statement was made in private does not, standing alone, remove it from the purview of public concern. Nevertheless, confidentiality is a factor in determining whether speech involved a matter of public concern. Accordingly, the district court in this case agreed to take the private nature of Plaintiff's statement into consideration. *See Koch*, 847 F.2d at 1447.

To resolve the public concern issue, the district court closely examined *Dill* and *Koch*. In *Dill*, a police officer brought a civil rights suit against his city employer, claiming he was demoted in retaliation for his attempt to bring to light exculpatory facts regarding certain homicides. 155 F.3d at 1199. The district court dismissed on the basis that the speech was not constitutionally protected or, in the alternative, defendants were entitled to qualified immunity. *Id.* at 1201. Reversing, we held the police officer's speech

- 5 -

was a matter of public concern because it was motivated by a desire to expose his employer's malfeasance. *Id.* at 1202. The *Dill* court, however, noted the speech would not have been of public concern if it merely had been a routine report disagreeing with the employer's position. *Id.*

In *Koch*, relied upon by the *Dill* court, Koch, a fire marshal, brought a civil rights action against his city employer claiming he was demoted because of his belief that a house fire he investigated in which a small child died was caused by arson. 847 F.2d at 1436. Koch had originally expressed the view that the fire was accidental. *Id.* The county attorney suspected he changed his theory after learning that the parents of the dead child could be charged with endangering a child. *Id.* at 1438. The Kansas Bureau of Investigation determined the arson suspicions were baseless, and that Koch's actions consequently amounted to official misconduct. *Id.* at 1436. After receiving the county attorney's letter stating Koch was untrustworthy as a witness in criminal prosecutions, Koch's supervisor demoted him and placed him under suspension. *Id.* at 1438.

Koch sued, alleging the city violated his First Amendment free speech rights. *Id.* Although the jury found the city liable, the district court granted the city's motion for judgment notwithstanding the verdict on the ground that Koch's speech was unprotected. *Id.* at 1438-39. The court held Koch's speech did not address a matter of public concern. *Id.* at 1439. We affirmed, agreeing Koch's report was not a matter of public concern because there was "no evidence that Koch's fire investigation report and his conclusion as

to the cause of the fire was in any way motivated or inspired by" a desire to reveal improprieties within the fire department or the county attorney's office. *Id.* at 1448.

In light of *Dill* and *Koch*, the district court in the present case declared the test to determine whether an employee's speech is of public concern turns on motive. If the employee's intent in writing a report is solely to do her job, then her speech is not of public concern. However, if the employee's motive is to reveal a scandal, improprieties, or malfeasance, then her speech is of public concern.

The district court held Plaintiff's motive in speaking about the W case was not to reveal improprieties between the D.A.'s office and DFS. She pled no facts indicating malfeasance or improprieties and did not allege facts suggesting she was fired because she expressed concern about the relationship between DFS and the D.A.'s office. Instead, Plaintiff's complaint merely alleges she was terminated because the D.A.'s office disagreed with her position about reuniting the W family. Accordingly, the court concluded her speech was not of public concern.

Plaintiff contends the district court adopted an overly narrow approach to the public concern issue. She avers that in relying on *Koch* and *Dill*, the district court adopted a test which ignores a host of cases holding that public employees' speech on a broad range of topics is protected under the First Amendment. Plaintiff maintains her statement about reunification of the W family, the first basis on which she was fired, involved nothing "personal," but rather touched on matters of significant public concern, namely how

parents and children under the jurisdiction of DFS should be treated, supervised, and reunited. Further, she urges she was terminated because of her impending, subpoenaed court testimony, and, thus, because courtroom speech is nearly always considered a matter of public concern, the district court violated the law in dismissing her complaint. *See Lytle v. Haysville*, 138 F.3d 857, 864 n.2 (10th Cir. 1998) (noting "[t]his circuit has concluded that a witness's sworn testimony in a court proceeding is entitled to heightened protection under the First Amendment").

The district court correctly determined Plaintiff's speech about the W family's reunification was not of public concern. Her speech took place at a closed and confidential meeting. The sole topic of discussion was reunification of a family where children had been removed from their mother, and Plaintiff's involvement at the meeting was to provide a routine report based on her official duties. As Defendants urge, we reject Plaintiff's contention that speech which simply "touches on" matter of general public or societal interests enjoys First Amendment protection. If this assertion were true, virtually every statement made by a public employee would be transmogrified into a matter of public concern. Then, the issue of public importance would be made to turn upon the nature of the speaker rather than the content of the speech.

A closer question is whether Plaintiff should have been allowed to advance a case on the basis of wrongful termination due to her impending court testimony, an issue the

district court did not discuss. Whether Plaintiff had actually been subpoenaed is unclear in the complaint. Plaintiff simply averred:

> During the discussion of the [W] case, the Plaintiff voiced her opinion that the children and their mother should shortly be reunited. With regard to an impending court hearing in the W case, *she stated that she would be testifying under subpoena from the mother* and that she would testify that: "When we go to Court, I will recommend family reunification pending economic stability."

> At this meeting, the Plaintiff, her supervisor, and Defendant Yeaman also discussed the Plaintiff's impending Court testimony. Defendant Yeaman asked if the Plaintiff were going to "take the side of the District Attorney" in the District Attorney's attempt to terminate the parental rights of the mother in the W case. The Plaintiff told Defendant Yeaman that she would testify truthfully at the hearing when the mother achieved some measure of economic stability. Defendant Yeaman then stated that she would attempt to prevent the Plaintiff from testifying.

Even assuming she was subpoenaed, the causal link between Plaintiff's termination and the court appearance is, at best, unclear. If it had been Ms. Yeaman's intent to "prevent" plaintiff from testifying, dismissing her from her employment would not have accomplished that purpose. Indeed, had Plaintiff been subpoenaed by "Ms. W," Plaintiff would have had to obey the subpoena or risk contempt of court.

Thus, employing Rule 12 (b)(6) review standards, we see no supportive allegations of a First Amendment deprivation to carry the day. Even though all allegations in the complaint are taken as true, the key allegations that she was subpoenaed and prevented from testifying by defendants are missing. Indeed, the complaint avers only that Ms. Yeaman "told the Plaintiff that she was being terminated . . . because she 'was not getting

- 9 -

along with the DA' . . . [and] because she was too 'pro family.'" On this record, therefore, we must conclude Plaintiff can prove no set of facts under which relief could be granted.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge