Laurence BURGIN, Appellant,

v.

Crispus NIX, Warden, ISP; John Henry, Head of Security, ISP; and John Sanders, No. 220, Unit Manager, ISP, Appellees.

No. 89–2241.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided March 30, 1990.

Anuradha Vaitheswaran, Des Moines, Iowa, for appellant.

Robert W. Pratt, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, BEAM, Circuit Judge, and WOODS,* District Judge.

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

PER CURIAM.

On June 20, 1985, plaintiff, Laurence Burgin, an inmate in the custody of the ISP, while being served a "nonsacked" meal,[1] threw a carton of milk toward a guard. The contents splashed upon the latter. Without notice or a hearing, Burgin was immediately placed on incorrigible inmate status and served sacked meals, pursuant to ISP Policy 573A. That policy states, in pertinent part:

DEFINITIONS:

> A. Incorrigible Inmates: For the purposes of this policy, incorrigible inmates are those inmates that have thrown, attempted to throw or have threatened to throw water, urine, feces, food, etc. on staff members that are attempting to provide services to them.
>
> . . . .
>
> B. Provision B
>
> In some cases, in order to provide safety for staff members, additional precautions must be taken to keep the inmate from receiving items that can be thrown on the staff members. In those cases, with the Warden's approval, they will be placed on a diet of sack lunches:

On June 27, 1985, the plaintiff was taken off incorrigible inmate status, which must be reviewed every seven days. However, he was returned that day, again without notice or a hearing, when he threw his lunch out of his cell. He remained on this status through July 3, 1985.

On August 30, 1985, the plaintiff filed a complaint under 42 U.S.C. § 1983, challenging the defendants' failure to provide him with a hearing prior to placing him on incorrigible inmate status and serving him "sacked" meals, thereby violating his fourteenth amendment right to due process. The district court found that ISP Policy 573A created a liberty interest protected by the fourteenth amendment. We reverse.

The focus of our inquiry is ISP Policy 573A. This policy contains two substantive provisions, A and B. Provision A mandates that a prisoner on incorrigible inmate status comply with certain requirements before being provided with an institutional service, e.g., turn on his light, remove any visual obstruction, stand in such a manner that he is clearly visible to a "staff member." He does not challenge the requirements outlined in this provision. Rather, his challenge is to provision B which permits prison officials to serve "sacked" meals to prisoners on incorrigible inmate status.

The initial step in this type of due process inquiry typically requires us to determine whether ISP Policy 573A creates a liberty interest. In this case, however, the policy requires us to initially weigh a more fundamental consideration. "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" Wolff v. McDonnell, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) [quoting Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)]. But though his rights may be diminished by the needs and exigencies of the institutional environment, the prisoner is not wholly stripped of the protections guaranteed by the Constitution. Id. One constitutional protection retained by the prisoner is the right to an adequate diet. See Campbell v. Cauthron, 623 F.2d 503, 505 (8th Cir.1980). Because control of the administrative details of a prison remains exclusively in the hands of prison officials, see Goff v. Menke, 672 F.2d 702, 705 (8th Cir.1982), control of the diet is within their discretion, assuming it is adequate.

The plaintiff has no objection to the adequacy of the "nonsacked" meals served at the institution, and the district court found that the "sacked" meals were adequate. Given the adequacy of both types of meals, and acknowledging the discretion possessed by prison officials in administering his diet, we are unable to recognize any constitutional right he had to either type of

---

1. A "nonsacked" meal is intended to include any meal not served in a sack. A "sacked" meal, for our purposes, shall mean a meal served in compliance with ISP Policy 573A.

meal. The record is devoid of any Iowa statute or ISP policy or regulation guaranteeing that plaintiff would receive a specific type of meal.

■ We have set forth a two-part test to determine whether a liberty interest has been created under ISP Policy 573A: (1) "does a statute, regulation, or official policy pronouncement contain particular substantive standards or criteria that significantly guide the decision makers" and (2) "does the statute, regulation, or official policy pronouncement use mandatory language requiring the decision makers to act in a certain way." *Williams v. Armontrout*, 852 F.2d 377, 379 (8th Cir.1988) [quoting *Nash v. Black*, 781 F.2d 665, 668 (8th Cir.1986)]. *See also Kentucky Department of Corrections v. Thompson*, 490 U.S. ——, 109 S.Ct. 1904, 1908–1910, 104 L.Ed.2d 506 (1989).

■ Under ISP Policy 573A, an inmate who has thrown, attempted to throw, or threatened to throw "water, urine, feces, food, etc." on a "staff member" is placed on incorrigible inmate status. The policy does provide that certain steps "will be taken" when an inmate is placed on this status; however this mandatory language is limited by provision B, which provides that "in some cases" a prisoner can be served "sacked" meals. The policy does not indicate in which cases "sacked" meals are to be served; it only requires that the Warden "approve, disapprove, or change" the recommendation of a subordinate. In sum, it cannot be said that "the use of 'explicitly mandatory language,' in connection with the establishment of 'specific substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest." *Kentucky Department of Corrections v. Thompson*, 109 S.Ct. at 1910. The Judgment is reversed, and the complaint filed herein is dismissed.