Felmon L. LAURY, Plaintiff,

v.

R.C. GREENFIELD, et al., Defendants.

No. 98–3024–JWL.

United States District Court,
D. Kansas.

March 6, 2000.

Felmon L. Laury, White Deer, PA, Pro se.

Christina L. Medeiros, Office of United States Attorney, Wichita, KS, Melanie D. Caro, Office of United States Attorney, Kansas City, KS, David S. Baker, Sherman, Taff & Bangert, P.C., Kansas City, MO, J. Charles Droege, Overland park, KS, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff is a convicted prisoner who filed this pro se civil rights action against various officers at the United States Penitentiary in Leavenworth, Kansas (USPL). Pursuant to 42 U.S.C. § 1983, as applied to federal officials by *Bivens*,[1] plaintiff makes a number of claims arising from his confinement at USPL. Defendants seek the dismissal of claims asserted against them in their official capacities pursuant to Fed.R.Civ.P. 12(b)(1), asserting that the court lacks subject matter jurisdiction over these claims (Doc. 31). Defendants also seek dismissal of claims asserted against

---

1. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619   (1971).

them as individuals pursuant to either Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief may be granted, or Fed.R.Civ.P. 56, summary judgment (Doc. 31). Additionally pending before the court is plaintiff's motion asking the court to enforce discovery and deny summary judgment (Doc. 50). For the reasons stated below, defendants' Rule 12(b)(1) motion is granted and defendants' motion for summary judgment is granted in part and denied in part (Doc. 31). Plaintiff's motion asking the court to enforce discovery and deny summary judgment is denied (Doc. 50).

## I. Background[2]

On June 10, 1997, plaintiff was placed in the Special Housing Unit (SHU) at USPL after an incident report was filed against him charging that he threatened another prisoner with bodily harm. Three days later, SHU staff intercepted a letter from plaintiff to his wife, wherein plaintiff wrote that he had sexual intercourse with Carol Muller, a teacher in the penitentiary's Education Department. Believing that Ms. Muller filed the incident report against him, plaintiff included the address and phone number of Ms. Muller and instructed his wife to contact "Internal Affairs, and give them personal information about defendant Muller and her son." (Doc. 41, Ex. A). In response to the letter, Associate Warden Greenfield met with plaintiff, Ms. Muller, Assistant Warden Durkins, Lt. Semiac, and Lt. Mildner on June 17, 1997. At the meeting, Warden Greenfield told plaintiff, "Before you leave this institution, I'm going to kick your ass."[3]

On July 11, 1997, Officer Preston was ordered by his superiors to remove plaintiff's address books from plaintiff's cell. Officer Preston removed three address books while plaintiff was out for recreation. After his superiors reviewed the address books, Officer Preston returned two address books to plaintiff's cell. On July 14, 1997, after realizing that one of the books was missing, plaintiff complained to Officer Nikes, the officer in charge when the removal occurred. In response, Officer Nikes walked away from plaintiff's cell and returned with four additional officers. Officer Nikes opened the door to plaintiff's cell and Officer Theodoroff entered and kicked plaintiff in the back. Then, as plaintiff was falling forward toward his bunk, Officer Theodoroff pushed plaintiff face down on the bunk, making it difficult for plaintiff to breath. Officers Nikes, Preston, Wolowicz, and Jacobs watched this assault. In connection with the assault, plaintiff stopped Physician Assistant (P.A.) Satterfield at approximately 6:10 a.m. on July 15, 1997, while P.A. Satterfield made his daily rounds. P.A. Satterfield's report states that plaintiff complained of "back pain and a wound since his assault several days ago." P.A. Satterfield's examination of plaintiff revealed a 5 × 15 centimeters superficial abrasion to plaintiff's right lower thoracic area. Later that day, P.A. Stowers examined plaintiff and found him to be alert with good motor coordination, but with an "irregular abrasion 2 × 5 centimeters with surrounding streak of mild erythema right lumbar heavy muscle which appears to be 1 or 2 days old injury."

On July 17, 1997, plaintiff requested to use the telephone. In response, Officer Ballou stated, "If you ask me for the telephone again, I am going to kick your ass, and since you snitched on my buddies, you ain't got a fucking thing coming nigger."

On July 18, 1997, plaintiff asked Lt. Sepanek, the SHU lieutenant, if he could speak with him about the alleged misconduct of his officers. Lt. Sepanek responded "Fuck you Laury, you have nothing

---

**2.** In accordance with the applicable summary judgment standard, the following facts are uncontroverted or related in a light most favorable to plaintiff.

**3.** In an order filed June 18, 1998, Judge Van-Bebber dismissed Warden Greenfield from this case, finding that verbal threats are not sufficient to cite a constitutional deprivation. (Doc. 4) (*citing Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979)).

coming." Then plaintiff was placed inside a holding cell for two hours and fifteen minutes until Lt. Sepanek could talk with him. When plaintiff informed Lt. Sepanek of the assault, Lt. Sepanek stated, "Whenever you or any other inmate, snitches on my officers, we fuck you."

On July 19, 1997, Officer Hall refused to bring plaintiff a "hot lunch," bringing plaintiff a "sack lunch" instead. Plaintiff had been placed on "sack lunch" status because Officer Theodoroff filed a report that plaintiff threw his food tray at him.

On August 29, 1997, Officer Jacobs ran into plaintiff's cell and slammed plaintiff to the floor. Plaintiff asserts that this caused him severe back pain. Then Officer Jacobs left the cell, before returning with a pair of handcuffs. Officer Jacobs used the handcuffs as "brass knuckles" and punched plaintiff in the back and across the left arm, causing "a big open cut wound." At 5:30 p.m. that day, P.A. Stowers was called in to check on plaintiff, who was lying on the floor. P.A. Stowers reported that plaintiff's pupils were equal when his eyelids were held open, but that plaintiff would not open his eyes. P.A. Stowers could not identify any specific injury, but opined that plaintiff appeared to be exhibiting some type of "protest reaction." The next day, plaintiff was examined by P.A. Taylor who found superficial abrasions on plaintiff's left humeral area and left lower back. Finally, plaintiff was again examined on September 5, 1997 by P.A. Stowers. P.A. Stowers determined that plaintiff had multiple scab wounds on his back and left arm that appeared to be a few days old.

On October 14, 1997, Officer Nikes slapped plaintiff and punched him three times in the jaw while he was wearing handcuffs. Then, an unknown officer pressed plaintiff's face up against a cement wall and pressed the handcuffs tighter on plaintiff's wrists. During this incident, Officer Preston continuously yelled "You're a nigger Laury."

## II. Liability of Defendants in Their Official Capacities

Plaintiff appears to be suing defendants in both their individual capacities and in their official capacities as employees of the Federal Bureau of Prisons. To the extent that plaintiff seeks monetary damages from the defendants in their official capacities, the action must be construed as one against the United States. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As noted by defendants in their motion to dismiss for lack of subject matter jurisdiction, the United States has not waived sovereign immunity in *Bivens* actions. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 483–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Chapoose v. Hodel,* 831 F.2d 931, 935 (10th Cir.1987). Plaintiff has emphatically asserted that he is proceeding solely under *Bivens. See* Plaintiff's Traverse to Defendant's Answer at 3; Plaintiff's Memorandum in Opposition to Summary Judgment at 2. Thus, plaintiff's claims against defendants in their official capacities are barred by the doctrine of sovereign immunity. *See Pleasant v. Lovell,* 876 F.2d 787, 793 (10th Cir.1989). Therefore, defendants' Fed.R.Civ.P. 12(b)(1) motion for lack of subject matter jurisdiction over claims against them in their official capacities is granted.

## III. Liability of Defendant's in their Individual Capacities

Pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), federal officials can be held individually liable for constitutional violations to the same extent as state officials under 42 U.S.C. § 1983. The court has jurisdiction over *Bivens* actions pursuant to 28 U.S.C. § 1331. However, defendants have argued that the court should dismiss plaintiff's *Bivens* claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, or alternatively, should grant summary judgment under Fed.R.Civ.P. 56.

Plaintiff has treated defendants' motion as a motion for summary judgment and has accordingly submitted a number of exhibits to support his claims. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment. The court finds the exhibits submitted by both parties useful, and it will therefore analyze defendants' motion under summary judgment standards. *See Lowe v. Town of Fairland, Oklahoma,* 143 F.3d 1378, 1381 (10th Cir.1998) ("A motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings. Fed.R.Civ.P. 12(b)(6). As Defendants recognize, courts have broad discretion in determining whether or not to accept materials beyond the pleadings.") To the extent that the court denies summary judgment on the merits, the court will determine whether any of plaintiff's claims are subject to summary judgment pursuant to defendants' assertions of qualified immunity.[4]

## A. Summary judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

### 1. *Alleged Deprivation of Plaintiff's Address Book*

■ Plaintiff first alleges that on July 11, 1997, Officer Preston entered plaintiff's cell while he was out for recreation, removed three address books, and then returned only two address books to the cell. Construing plaintiff's complaint liberally, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this factual allegation could give rise to claims of either a negligent or intentional deprivation of plaintiff's property by Officer Preston. Under either interpretation, however, plaintiff's claim fails. The Tenth Circuit was faced with a similar situation in *Burton-Bey v. United States,* No. 96-3241, 1996 WL 654457 (10th Cir. Nov. 12, 1996) (unpublished). In *Burton-Bey,* the plaintiff claimed that officials at USPL confiscated his hat without due process of law. *Id.* at *1. Upholding a grant of summary judgment in favor of the prison officials, the Circuit stated:

> Neither a claim that defendants acted negligently nor a claim that defendants acted intentionally ... can provide plaintiff with an actionable *Bivens* claim. If defendants failed to issue the cap to

**4.** Pursuant to the pleading standards required when a qualified immunity defense is raised, defendants also state that claims against Ms. Muller and Officer Nikes should be dismissed under Fed.R.Civ.P. 8(a). The court will follow the general Tenth Circuit practice of considering qualified immunity pleading requirements in the overall qualified immunity analysis, rather than under a separate Rule 8(a) analysis. *See, e.g., Pleasant v. Lovell,* 876 F.2d 787, 793 (10th Cir.1989); *Dill v. City of Edmond, Oklahoma,* 155 F.3d 1193 (10th Cir.1998).

plaintiff as a result of their negligence, there would be no unconstitutional deprivation of property. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligence of federal agent resulting in property loss not constitutional deprivation). Plaintiff also claims defendants acted beyond their authority in intentionally retaining his cap. Unauthorized intentional deprivation of property does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *See Hudson,* 468 U.S. at 533, 104 S.Ct. 3194.

*Id.* at *2. The court went on to find that the Federal Tort Claims Act (FTCA) provided an adequate post-deprivation remedy. *See* 28 U.S.C. § 2680(h) (actions for conversion). Under the Tenth Circuit's analysis, even construing plaintiff's allegations as true pursuant to summary judgment standards, plaintiff has asserted no legal claim upon which the court can grant relief. *Daniels* prohibits plaintiff's claim for the negligent deprivation of his property and *Hunter* prohibits plaintiff's claim for the intentional taking of his property since a post-deprivation remedy, the FTCA, is available. Therefore, the court grants defendants' motion for summary judgment as to this claim.

### 2. *Alleged Use of Excessive Force*

■ Plaintiff also states a number of facts in his complaint which could be construed to give rise to claims of unconstitutional use of excessive force by prison guards. Plaintiff alleges that he was physically harmed by prison guards on July 14, 1997, August 29, 1997, and October 14, 1997. The Eighth Amendment protects convicted prisoners from the use of excessive force while in prison. *See Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The core inquiry for Eighth Amendment excessive force claims is "whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically" for the very purpose of causing harm. *Hudson v. McMillian,* 503 U.S. 1, 7, 112

S.Ct. 995, 117 L.Ed.2d 156 (1992). Force is malicious and sadistic when no disciplinary rationale or penal purpose justifies it. *See Giron v. Corrections Corp. of America,* 191 F.3d 1281, 1290 (10th Cir.1999). A wanton and unnecessary infliction of harm for no legitimate purpose always violates the Eighth Amendment. *See Whitley,* 475 U.S. at 321–22, 106 S.Ct. 1078. However, a de minimis use of physical force does not qualify as "wanton and unnecessary" unless it is the sort "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 8, 112 S.Ct. 995.

#### a. *The Alleged Incident on July 14, 1997*

■ Plaintiff alleges in his verified complaint that on July 14, 1997 Officer Theodoroff entered his cell, kicked him in the back, and pushed his face into a mattress, making it difficult for him to breath. When a pro se complaint is sworn under penalty of perjury, it is treated as an affidavit and serves as evidence at the summary judgment stage. *See Green v. Branson,* 108 F.3d 1296, 1301 n. 1 (10th Cir.1997). In further support of his claim, plaintiff has submitted medical records which reveal that on the following day P.A. Satterfield reported that a superficial abrasion 5 × 15 centimeters existed on plaintiff's right lower back, and P.A. Stowers reported that an irregular abrasion 2 × 5 centimeters existed on the right side of plaintiff's back which appeared to be one or two days old. Plaintiff appears to argue that Officer Theodoroff exerted the excessive force either for no reason or in retaliation for writing the June 10, 1997 letter to his wife. Defendants assert that the alleged use of force is simply untrue; they submit a number of affidavits denying any assertion of force against plaintiff on July 14, 1997. *See* Declarations of Theodoroff, Nikes, Preston, and Wolowicz.

The parties clearly have divergent theories of what occurred on July 14, 1997. If plaintiff's version of the facts is true, Officer Theodoroff acted for no legitimate pe-

nal purpose and clearly violated plaintiff's Eighth Amendment rights. *See, e.g., Sasa v. Zavaras,* 1998 WL 849764, at *2, 166 F.3d 1222 (10th Cir. Dec. 9, 1998) (unpublished) ("Sasa alleged Vendetti physically attacked and beat him for no reason. Assuming these allegations are true, Vendetti clearly would have violated Sasa's Eighth Amendment rights."). At the summary judgment stage, the court may not resolve disputed facts, but rather must view the facts in the light most favorable to the nonmoving party. Therefore, taking plaintiff's version of the facts as true, the court denies defendants' motion for summary judgment as to the excessive force claim against Officer Theodoroff.

■ Additional Eighth Amendment claims also arise from the alleged July 14, 1997 incident. Plaintiff's complaint asserts that Officers Nikes, Preston, Wolowicz, and Jacobs observed Officer Theodoroff beating plaintiff but failed to take any action to protect plaintiff. Prison guards who observe the imposition of excessive force upon a prisoner at the hands of another guard but who take no steps to protect the prisoner violate the Eighth Amendment. *See Sasa,* 166 F.3d 1222, 1998 WL 849764, at *2 (*citing Burgess v. Moore,* 39 F.3d 216, 218 (8th Cir.1994)); *see also Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (Eighth Amendment imposes an affirmative duty on prison officials to take reasonable measures to guaranty the safety of inmates). Officers Nikes, Preston, Wolowicz, and Jacobs have each submitted an affidavit stating that they did not observe any guard physically assaulting plaintiff on this date. Under summary judgment standards, however, the court must view plaintiff's version of the facts as true. The court thus denies defendants' summary judgment motion as to the Eighth Amendment claims against Officers Nikes, Preston, Wolowicz, and Jacobs arising from their failure to intervene to protect plaintiff.

### b. The Alleged Incident on August 29, 1997

The second alleged assertion of excessive force against plaintiff occurred on August 29, 1997. Plaintiff's verified complaint states that, on that date, Officer Jacobs entered plaintiff's cell and slammed plaintiff to the floor. Then Officer Jacobs punched plaintiff in the back and across his left arm while using a pair of handcuffs as "brass knuckles." Plaintiff appears to contend that this use of force was asserted either for no reason at all or in retaliation for writing the June 10, 1997 letter to his wife. Officer Jacobs has submitted an affidavit in which he denies ever assaulting plaintiff or observing any other staff member assault plaintiff. Like the parties' rendition of the facts, the medical reports relating to this claim present an unclear picture of what happened on August 29, 1997. In a report dated August 29, 1997, P.A. Stowers reported that plaintiff appeared to be exhibiting a "protest reaction;" plaintiff's pupils were equal when his eyelids were held open, but plaintiff would not move or open his eyes. In a report transcribed the next day, however, P.A. Taylor wrote that plaintiff had superficial abrasions on his left humeral area and lower back. Finally, on September 5, 1997, P.A. Stowers again examined plaintiff and reported that plaintiff had multiple scab wounds on his back and left arm that appeared to be a few days old.

Under the same standard applied to the July 14, 1997 incident, the court must view the evidence in the light most favorable to plaintiff. Plaintiff's verified complaint and the medical reports dated August 30, 1997 and September 5, 1997 could be construed to show that Officer Jacobs assaulted plaintiff with no legitimate penal purpose. Under plaintiff's version of the facts, Officer Jacobs violated plaintiff's Eighth Amendment rights. *See Sasa,* 166 F.3d 1222, 1998 WL 849764, at *2. Therefore, under summary judgment standards, the court denies defendants' motion as to the

excessive force claim against Officer Jacobs.

### c. The Alleged Incident on October 14, 1997

Plaintiff's final claim of excessive force in violation of his Eighth Amendment rights arises from facts which allegedly occurred on October 14, 1997. Plaintiff states in his verified complaint that Officer Nikes slapped plaintiff and punched him three times in the jaw. Then an unknown officer pressed plaintiff's face against the wall and pressed the handcuffs which plaintiff was wearing tight against plaintiff's wrists. Plaintiff again appears to contend that these assaults were inflicted either for no reason at all or in retaliation for writing the June 10, 1997 letter to his wife. Plaintiff has asserted no medical evidence to support these claims. Officer Nikes has submitted an affidavit stating that he has no personal knowledge of any assaults against plaintiff while plaintiff was confined in the SHU at USPL.

The court must again deny summary judgment on these claims. Although here plaintiff offers no medical reports to substantiate his claims, de minimis uses of force are actionable if they are the sort "repugnant to the conscience of mankind," even if they do not cause injury. *Hudson,* 503 U.S. at 8, 112 S.Ct. 995. Construing the allegations made in plaintiff's verified complaint as true, the court finds the force asserted by Officer Nikes and the unknown officer to be repugnant to the conscience of mankind because it served no legitimate penal purpose. For example, the force was not inflicted after plaintiff refused to obey an order or while attempting to remove plaintiff from his cell. *Compare Miller v. Glanz,* 948 F.2d 1562, 1567 (10th Cir.1991) (no excessive force when inmate resisted instructions to put his hands behind his back and wrestled with officer); *Thompson v. Hamilton,* 127 F.3d 1109, 1997 WL 639320, at *1 (10th Cir. Oct.

14, 1997) (guard's grabbing and twisting of prisoner's arm and choking of prisoner was de minimis because it occurred while guard attempted to remove prisoner from his cell, was brief, and failed to result in injury). Rather, under the version of events presented by plaintiff, the force was completely unnecessary. Viewing the facts in the light most favorable to plaintiff, a reasonable fact finder could find that plaintiff's Eighth Amendment rights were violated. Thus, defendants' motion for summary judgment as to the claims of excessive force against Officer Nikes and the unknown officer is denied.

### d. Other Persons Named in Connection With the Excessive Force Claims

The court notes that plaintiff's complaint mentions two additional persons in connection with his excessive force claims, but does not state specific facts demonstrating the involvement of these persons. "To state a constitutional claim, plaintiff must do more than simply state a conclusion or engage in 'artful pleading.' A plaintiff must state a compensable claim for relief that details the facts forming the basis for the claim." *Blinder, Robinson, & Co., Inc. v. U.S. S.E.C.,* 748 F.2d 1415, 1419 (10th Cir.1984) (internal citation and quotation marks omitted).

First, in the section of plaintiff's complaint entitled "Nature of the Case," plaintiff asserts that on October 14, 1997, "officer Ms. Morales (sic)" used unnecessary force while transferring plaintiff to another building. However, plaintiff did not list Officer Moreels[5] as a defendant, nor did he assert any facts against Officer Moreels in the "Supporting Facts" section of his complaint. Moreover, Officer Moreels has submitted an affidavit averring that she did not assault plaintiff during the transfer. To the extent that plaintiff intended to make Officer Moreels a defendant, the

---

**5.** It is uncontroverted that plaintiff was referring to Officer Moreels when he wrote "officer Ms. Morales."

court finds that plaintiff has failed to present facts which would support a constitutional claim against her and therefore dismisses Officer Moreels from this case.

Second, plaintiff named Ms. Muller as a defendant in the caption of his complaint, but then asserted no claims against her in the body of the complaint. Plaintiff only mentions Ms. Muller when discussing the June 13, 1997 letter to his wife, in which he informed his wife of a relationship that he allegedly had with Ms. Muller. To the extent that plaintiff intended to make Ms. Muller a defendant, the court finds that plaintiff has failed to show facts which would support a constitutional claim against her and therefore dismisses Ms. Muller from this case.

### 3. Supervisor Liability for the Alleged use of Excessive Force

In connection with the three alleged incidents of excessive force discussed above, plaintiff's complaint also states that Lt. Sepanek had knowledge of the ongoing misconduct of his officers but did nothing to prevent the assaults. The court construes this allegation as a *Bivens* claim for inadequate supervision. "A supervisor is not liable under section 1983 unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988) (internal citations and quotation marks omitted). A supervisor must have participated or acquiesced in the constitutional violation of the prisoner to be held liable. *See id.* at 1528. Applying these standards in *Green v. Branson*, the Tenth Circuit held that the district court erred in granting summary judgment to a warden who allegedly took no action to obtain medical care for plaintiff after prisoners told him that plaintiff had been beaten very badly by prison guards. 108 F.3d 1296, 1302–03 (10th Cir.1997). The court held that the warden's deliberate indifference established an affirmative link to the constitutional violation and the warden's failure to supervise. *See id.* at 1303.

Similarly, the court finds that plaintiff has presented evidence of an affirmative link between the alleged incidents of excessive force and Lt. Sepanek's failure to supervise the guards, as demonstrated by Lt. Sepanek's alleged acquiescence to the assaults. Plaintiff states in his verified complaint that when he informed Lt. Sepanek of the assaults, Lt. Sepanek responded: "Whenever you or any other inmate, snitches on my officers, *we* fuck you." (emphasis added) Viewing this statement in the light most favorable to plaintiff, the court finds that a reasonable fact finder could conclude that the use of the term "we" demonstrates that Lt. Sepanek knew of the incidents of excessive force and either participated in them or allowed them to continue. The court therefore denies summary judgment on the failure to supervise claim asserted against Lt. Sepanek.

### 4. Alleged Verbal Threats of Bodily Harm

The next fact situation described in plaintiff's verified complaint which could be construed as a *Bivens* claim is the allegation that on July 17, 1997, Officer Ballou threatened plaintiff with bodily harm and called him a "snitch" and a "nigger." Officer Ballou denies these allegations in his affidavit. Even if the facts as construed by plaintiff are true, however, they fail to give rise to a constitutional claim. As Judge VanBebber related in his June 18, 1998 Order dismissing the claim against Warden Greenfield, it is well settled in the Tenth Circuit that words alone, no matter how violent or profane, are not sufficient to give rise to a civil rights claim. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979). Thus, even assuming Officer Ballou verbally threatened plaintiff and called him the names alleged, a civil rights claim did not arise. The court therefore grants defendants' motion for summary

judgment as to this potential claim and dismisses Officer Ballou from this case.

### 5. Alleged Placing of Plaintiff in Holding Cell and Verbal Abuse

██ Plaintiff's complaint alleges that on July 18, 1997, plaintiff asked Lt. Sepanek if he could speak with him regarding the alleged misconduct of the prison guards. According to plaintiff, Lt. Sepanek replied, "Fuck you Laury, you have nothing coming." Then plaintiff was placed in a holding cell for two hours and fifteen minutes. Viewing these claims, as well as evidence offered in support of their accuracy, in the light most favorable to plaintiff, the court finds that Lt. Sepanek did not violate plaintiff's constitutional rights. First, as stated above, words alone, no matter how offensive, are not sufficient to give rise to a civil rights claim. See Collins, 603 F.2d at 827. Second, the placement of a convicted prisoner in a holding cell for a short period of time is not actionable because it does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (placing prisoner in solitary confinement for 30 days not actionable where it did not work a major disruption in prisoner's environment). Because plaintiff's version of the facts do not give rise to a constitutional claim, Lt. Sepanek is entitled to judgment as a matter of law and summary judgement is granted in his favor on this claim.

### 6. Alleged Refusal to Bring Plaintiff a Hot Meal

██ Finally, plaintiff claims that on July 19, 1997 Officer Hall refused to bring plaintiff a "hot lunch," bringing plaintiff a "sack lunch" instead.[6] This claim is clearly not actionable. Prisons must be given the flexibility "warranted in the fine-tuning of the ordinary incidents of prison life." Sandin, 515 U.S. at 483, 115 S.Ct. 2293

(affirmatively citing the Eighth Circuit case of Burgin v. Nix, 899 F.2d 733 (8th Cir.1990), which held that a prisoner had no liberty interest in obtaining a "tray lunch," rather than a "sack lunch.") Accordingly, Officer Hall's refusal to bring plaintiff a hot lunch on one day did not violate plaintiff's constitutional rights. See also Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir.1984) (denying prisoner a few meals does not rise to the level of an Eighth Amendment violation). As no reasonable fact finder could conclude that plaintiff's rights were violated under these facts, summary judgment is granted as to this claim and Officer Hall is dismissed from this case.

### B. Qualified Immunity

██ To the extent that plaintiff's claims relating to the use of excessive force have survived summary judgment on the merits, the court must determine whether summary judgment should nevertheless be granted pursuant to the doctrine of qualified immunity. The doctrine of qualified immunity holds that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There are three principle components of this doctrine. First, the "[p]laintiff has the burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right." Hollingsworth v. Hill, 110 F.3d 733, 737 (10th Cir.1997) (citing Abeyta v. Chama Valley Indep. Sch. Dist., 77 F.3d 1253, 1255 (10th Cir.1996)). Second, the plaintiff must "demonstrate that the constitutional rights the defendants allegedly violated were clearly established at the time of the conduct at issue." Id. (citing Albright v.

---

6. Plaintiff's complaint alleges that Officer Hall completely refused to provide plaintiff his noon meal, but Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment states that plaintiff was provided a sack lunch.

*Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995)). Ordinarily, for the law to be "clearly established," there must be a Supreme Court or Tenth Circuit decision on point or the weight of authority from other circuits must be as plaintiff maintains, and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *V–1 Oil Co. v. Means,* 94 F.3d 1420, 1422 (10th Cir.1996) (*quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Third, if the plaintiff satisfies these burdens, the burden shifts to the defendant to demonstrate that "no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and information the defendant possessed at the time of [his or her] actions." *Hollingsworth,* 110 F.3d at 737 (*citing Guffey v. Wyatt,* 18 F.3d 869, 871 (10th Cir.1994)). The court will apply these three components to each of the claims which were not dismissed above.

### 1. Alleged Use of Excessive Force

Defendants Theodoroff, Jacobs, Nikes, and the unknown officer argue that they are immune from plaintiff's claims of excessive force based on the qualified immunity doctrine. Applying the three components of this doctrine, the court finds that this defense fails. First, as discussed in Section III.A.2 above, plaintiff has presented evidence to support his claims that these officers violated his Eighth Amendment Right to be free from excessive force.

Second, plaintiff has met his burden to demonstrate that the right at stake was clearly established. It has long been established that convicted prisoners subjected to malicious and sadistic assaults by prison officials are entitled to at least the protection of the Eighth Amendment. *See Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078; Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation, § 3.17, at 287 (1997) ("A prisoner who shows that prison officials used force maliciously and sadistically ... has ... established that the officials violated clearly established law.").

Third, summary judgment is not appropriate on the excessive force claim because the officers have not met their burden to show that there are no material issues of disputed fact that the officer's actions were objectively reasonable. As the court explained above, a reasonable jury could conclude on the evidence presented that these officers used unnecessary force against plaintiff for no legitimate penal purpose. Accordingly, summary judgment based on the qualified immunity defense is denied.

### 2. Alleged Failure to Protect Plaintiff From Excessive Force

The second remaining claim that could potentially be dismissed under the qualified immunity doctrine is the assertion that Officers Nikes, Preston, Wolowicz, and Jacobs watched Officer Theodoroff assault plaintiff on July 14, 1997, but failed to intervene to protect plaintiff. The court finds that the elements of the doctrine are not met. First, plaintiff has met his burden of presenting facts that, if viewed as true, show that the officer's misfeasance violated a constitutional right. In Section III.A.2.a the court found that prisoners have an Eighth Amendment right to receive protection from prison guards who observe the infliction of excessive force.

Second, this Eighth Amendment right was clearly established at the time of the alleged violation. In 1981 the Supreme Court stated that being assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and in 1994 the Court held that the Eighth Amendment imposes an affirmative duty on prison officials to "take reasonable measures to guaranty the safety of inmates," *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See also Estate of Davis v. Delo,* 115 F.3d 1388, 1395 (8th Cir.1997) (finding that in 1992 the law was "clearly

established" that prison officials could be liable for failure to protect an inmate from assault by another prison official). These earlier cases demonstrate that the law requiring Officers Nikes, Preston, Wolowicz, and Jacobs to intervene and protect plaintiff from excessive force was clear in 1997 when the alleged incident occurred.

Third, defendants cannot show that no material fact dispute exists as to whether their conduct was objectively reasonable. Although they deny observing an assault on July 14, 1997, plaintiff has presented evidence to the contrary. If plaintiff's evidence is believed, it was clearly unreasonable for Officers Nikes, Preston, Wolowicz, and Jacobs to take no action while Officer Theodoroff maliciously assaulted plaintiff. Because disputed factual issues remain, the court will not grant summary judgment based on qualified immunity.

### 3. *Supervisor Liability for the Alleged use of Excessive Force*

Finally, Lt. Sepanek seeks summary judgment on the basis that he is immune from plaintiff's claims of supervisor liability. Again, however, the court finds that the defense of qualified immunity cannot be supported. First, the court found in section III.A.3 that the facts in plaintiff's verified complaint support an inference that Lt. Sepanek violated plaintiff's constitutional right by knowingly acquiescing in the assaults by the guards he supervised.

Second, the law of supervisor liability was clearly established at the time of the alleged assaults. On point Tenth Circuit decisions had applied the doctrine prior to the alleged incidents of excessive force. *See, e.g., Green,* 108 F.3d at 1302–03; *Meade,* 841 F.2d at 1527–28.

Third, Lt. Sepanek has failed to demonstrate that no material facts speaking to the objective reasonableness of his conduct remain in dispute. The evidence presently before the court could lead a reasonable fact finder to conclude that Lt. Sepanek knew about the ongoing assaults by his guards and unreasonably acquiesced in them. Under the circumstances, the court

will not grant summary judgment in Lt. Sepanek's favor on plaintiff's claim of inadequate supervision.

### IV. Plaintiff's Motion to Enforce Discovery and Deny Summary Judgment

In addition to defendants' motions, the court has before it a one sentence motion filed by plaintiff, asking the court to "please enforce the discovery motion, and deny the defendant's (sic) motion for summary judgement (sic)." The court denies this motion as moot. First, the court issued an order on August 9, 1999 staying discovery in this case until defendants' dispositive motion had been ruled upon (Doc. 28). The court issued a second order on August 25, 1999 denying plaintiff's motion in opposition to the stay of discovery (Doc. 29). In light of these two orders, the court finds plaintiff's current motion to enforce discovery moot. Now that the court has ruled upon defendants' dispositive motion, however, the court orders the stay of discovery lifted. Second, the court has ruled on defendant's summary judgment motion above, making plaintiff's request to deny summary judgment moot. Therefore, plaintiff's motion is denied.

**IT IS ACCORDINGLY ORDERED** that Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. 31) is granted in part and denied in part. Specifically, defendants' Rule 12(b)(1) motion for dismissal of claims asserted against defendants in their official capacity is **granted.** Defendants' motion for summary judgment is **granted** as to the claims alleging that Officer Preston deprived plaintiff of his address book, that Officer Moreels and Ms. Muller exerted excessive force against plaintiff, that Officer Ballou verbally threatened plaintiff, that Lt. Sepanek verbally abused plaintiff and placed him in a holding cell, and that Officer Hall refused to bring plaintiff a hot meal. Defendants' motion for summary judgment is **denied** as to the Eighth Amendment claims alleging excessive force

by Officers Theodoroff, Jacobs, Nikes, and an unknown officer; the failure to protect plaintiff from excessive force by Officers Nikes, Preston, Wolowicz, and Jacobs; and failure to adequately supervise by Lt. Sepanek.

**IT IS FURTHER ORDERED** that plaintiff's motion asking the court to enforce discovery and deny summary judgment (Doc. 50) is **denied.**

**IT IS FURTHER ORDERED** that the court's August 9, 1999 order staying discovery (Doc. 28) is lifted, and this case is referred to Judge Walters for all further pretrial proceedings.

**IT IS SO ORDERED.**