**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELIZABETH A. BROWN and JAMES
W. SLICKERS, JR.,

     Plaintiffs - Appellees,

v.

TOWN OF LABARGE, WYOMING, and
DENNIS HACKLIN, KURT AMOS, and
JAY EDMISON, each in their individual
capacities,

     Defendants - Appellants.

No. 01-8082
(D.C. No. 00-CV-124-D)
(D WYOMING)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, HOLLOWAY** and **HARTZ,** Circuit Judges.

     This is an interlocutory appeal from a denial of qualified immunity in a § 1983

action alleging deprivation of procedural due process and First Amendment rights.

Plaintiffs-Appellees allege that the individual Defendants-Appellants deprived them of

their constitutional rights by terminating their employment without procedural due

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

process and in retaliation for exercise of the Plaintiffs' right of protected speech. The district court denied the Defendants' motion for summary judgment asserting qualified immunity grounds, holding that for purposes of summary judgment, the Plaintiffs had a protected property interest in their employment, that they were not afforded the requisite procedural due process, that they were terminated in retaliation for Plaintiffs' speech on a matter of public concern, and that the Defendants were not entitled to qualified immunity. Defendants appeal. For reasons detailed below, we AFFIRM the denial of summary judgment for the Defendants. We also DISMISS Defendants' appeal as to the issue of whether Brown was fired in an emergency situation and whether Slickers was afforded pretermination procedure for lack of jurisdiction.

# I

## *Background*

This case involves two conceptually separate, but related, appeals. Plaintiffs-Appellees are James W. Slickers, Jr. ("Slickers") and Elizabeth A. Brown ("Brown"), both former employees of the Town of LaBarge ("Town") in Wyoming, which has a population of 601.[1] Slickers was employed as a police officer and Town Marshal while

---

[1]The 2000 census reports 601 persons residing within the postal zip code of the Town of LaBarge, Wyoming. Highlights from the Census 2000 Demographic Profiles, ZIP Code Tabulation Area 83123, (2000), *available at* http://factfinder.census.gov/servlet/SAFFFacts?_event=Search&geo_id=01000US&_geoContext

Brown was employed as the Town Clerk. Both allege that Defendant-Appellant Dennis Hacklin ("Hacklin"), Mayor of LaBarge, violated their constitutional rights by terminating them from their positions with the Town without the requisite procedural due process and in retaliation for protected speech. Slickers, however, also claims that the deprivation of his rights was caused by Jay Edmison ("Edmison"), a city councilman. Since each alleged procedural due process violation hinges upon different facts, we will address each Plaintiff separately with respect to that issue. As to the First Amendment issue, the facts are congruent and we will address the Plaintiffs collectively.

"The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Reed v. Nellcor Puritan Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002). The following facts are stated in that summary judgment record.

## A

### *Brown's due process claim against the Town*

Elizabeth Brown was first appointed Town Clerk on December 30, 1996 by then Mayor Charles Snively. She continued to serve as Town Clerk through the administrations of Mayors Dale Hunter and Dan Schmid. Hacklin became mayor of the

---

=&_street=&_county=&_cityTown=&_state=&_zip=83123&_lang=en&_sse=on

Town in early 1999. Hacklin scheduled Brown's reappointment on January 4, 1999, but instead waited until early February, 1999 to reappoint her. II App. 382.

While in limbo between January 4, 1999 and her February reappointment, Brown continued to perform the functions of the Town Clerk. *Id.* The delay in her reappointment caused her concern regarding the scope of her authority because her bond had expired at the end of 1998. *Id.* This prompted Brown to contact Annette Thorrington at the Wyoming Association of Municipalities, Clerks and Treasurers ("WAMCAT") for guidance. Thorrington told Brown that she could not sign Town checks until she had been reappointed and her bond was renewed. II App. 382-83.

On January 14, 1999, Hacklin directed her to sign several checks. II App. 383. After Brown explained that she could not sign anything until she had been reappointed and her bond was renewed, Hacklin told her to sign the checks and that he would "take the heat." *Id.* Hacklin then threatened Brown, telling her, "I'll cut off your pretty little head. I have two years to teach you. I am the man." *Id.* He also ordered her not to call WAMCAT or the Town Attorney again because he knew "all the laws and some [she] had never heard of" and he had "the ultimate power." *Id.* Brown signed the checks despite her misgivings. *Id.*

In February 1999, Brown found an anomalous charge for online services on the January bill for the Emergency Medical Services ("EMS") credit card. II App. 383.

When she questioned Kurt Amos[2] ("Amos") about whether the EMS was having computer problems, he answered affirmatively. *Id.* Brown paid the bill that month. *Id.* When the charge reappeared on the March bill, Brown went to Monetta Dixon, the president of the EMS, and was told that EMS did not have an online service. II App. 383-84. Dixon also identified Amos as having online service at his home and directed Brown to investigate the charge. *Id.* at 384. Brown discovered that Amos had opened the account that was listed under the LaBarge Ambulance Service. *Id.*

Brown reported the results of her investigation to Hacklin who promised to "take care of it." II App. 384. Thereafter, Amos tendered a check for $39.90 to the town. *Id.* Brown did not accept the check because Dixon had told her the charge was fraudulent, and instead told Amos to return with a money order. *Id.* Amos returned with a money order for $19.95 and denied that the charge had been recurring or that he owed more than the amount of the money order. *Id.* Subsequently, a third charge occurred; bringing the total to almost $60.00. *Id.*

Brown states that she did not question Hacklin about the credit card issue again, nor did she raise the issue publicly. II App. 384. Nonetheless, Brown claims that the credit card issue exacerbated the severity and frequency of Hacklin's threats against her. *Id.* Brown reported the threats to Slickers, her husband, and to her father-in-law, but did not discuss them generally. II App. 384-85.

---

[2]Kurt Amos was one of the Town's two police officers and also served as an EMT.

Hacklin made at least five threats of violence against Brown. II App. 385. On one occasion, Hacklin threatened to shoot Brown if she did not complete budgets. On another, Hacklin threatened to kill Brown in Amos' presence. *Id.* Brown asserts that these threats caused her to suffer from extreme anxiety and emotional distress resulting in vomiting and encopresis. *Id.* She sought and received medical treatment and psychological counseling and was prescribed medication for depression and anxiety. *Id.* When Brown asked Hacklin to stop threatening her on June 14, 1999, Hacklin responded "Then what am I supposed to do, stab you three times in the chest to get my point across?," while making stabbing gestures with a serrated letter opener. *Id.*

On July 21, 1999, Hacklin brought up the credit card issue during the public portion of a Town Council meeting. II App. 386. The EMS volunteers and Amos, Hacklin and the Town Council retired to a private executive session to discuss the matter. During that session, Amos denied that Brown advised him of the charges or that the total bill had been $60.00. *Id.* Brown, at the behest of the EMS volunteers, was invited to the private executive session to rebut Amos's contentions. *Id.* In response, Amos called Brown a "liar" and told her to "shut up." *Id.*

When the public meeting resumed, several citizens publicly criticized Hacklin's handling of the issue. *Id.* at 387. The Town Council meeting then degenerated into an exchange of personal insults. Brown's participation in this meeting was limited to criticizing Councilwoman Sakai for violating the confidentiality of citizen complaints.

Brown's father-in-law, however, publicly accused Hacklin of threatening Brown. *Id.* at 389. After this exchange, Hacklin turned to Brown and said "Mrs. Brown, you're out of a job." *Id.* at 390.

On July 30, 1999, Brown tried to submit her notice of appeal of her termination to Hacklin by certified mail. III App. 687 (Order on Motion For Summary Judgment on Claims By Brown). The notice was returned to her marked "Refused." *Id.* On August 9, 1999, Brown retained counsel who prepared and served a Notice of Claim on Defendants. *Id.* On August 12, 1999, Brown received a certified letter containing Hacklin's purported reasons for firing her:

> "Among other issues, Mrs. Brown had been remanded [sic] in the past for leaving her duties as Town Clerk in favor of being seated in the public seating area before the meeting was adjourned. Despite the previous reprimand, Mrs. Brown left her position again and seated herself with the public. In my opinion, Mrs. Brown's above repeat conduct was in blatant disregard of her duties as well as my previous admonitions. This repeated behavior has violated her conditions of employment . . . and constitutes an emergency situation requiring immediate discharge."

III App. 687 (Order on Motion For Summary Judgment).

On September 2, 1999 Brown learned from the newspaper that her appeal had been set for a hearing on September 6, 1999. This hearing was subsequently rescheduled for December 6, 1999 at Brown's behest. *Id.* Neither Brown nor her counsel, however, appeared for this hearing. *Id.* Brown alleges that she did not attend because of the failure to reach agreement on the propriety and untimeliness of the post-termination procedure, resolution of deficiencies in the pre-termination procedures, and the resulting prejudice to

Brown.  II App. 394.

The essence of Brown's federal court complaint is summarized in Part II-A below.

**B**

*Slickers's due process claim against the Town*

Slickers was hired as a police officer by the Town in 1995.  III App. 665 (Order on Motion for Summary Judgment on Claims by Slickers).  In 1999 he was appointed Acting Chief of Police, then Chief of Police (the title of this position was subsequently changed to "Town Marshal").  *Id.* at 665-66.  In early 1999, Hacklin took office as the newly elected Mayor.  I App. 61.

The relationship between Slickers and Hacklin began to deteriorate in February 1999, when Hacklin insisted on hiring Kurt Amos as a police officer.  III App. 667-68.  Slickers was uncomfortable with this decision because it disregarded established hiring procedures and there were other, more qualified, applicants.  *Id.* at 667.  Slickers was also concerned about incomplete and misleading information Amos had provided in an interview and the results of Amos' background check.  *Id.*  Hacklin, however, did not share Slickers's unease and insisted on Amos's hiring.  A few months later, the aforementioned issue regarding Amos's improper personal use of the EMS credit card arose.  *Id.* at 668.  Slickers began an investigation into a suspected misappropriation of

funds and told Hacklin, who replied that "it was a mistake" and he would "talk" to Amos. *Id.*

In April 1999, Slickers was suspended with pay pending a Division of Criminal Investigations (DCI) investigation into allegations made by a Town resident. After an investigation, the Lincoln County Attorney exonerated Slickers of any misconduct. II App. 455-57 (Decision of Lincoln County Attorney). During Slickers's absence, the relationship between Hacklin and Brown deteriorated because of Hacklin's allegedly "retaliatory harassment" of Brown. *Id.* Slickers was concerned about Hacklin's actions towards Brown and Hacklin's complicity with Amos's misconduct. *Id.* Slickers referred the matter to the DCI because Hacklin was his direct supervisor and appointing authority.

On October 28, 1999, the newspaper published a report about the pending DCI investigation of Hacklin, although the parties were not identified by name. II App. 462. In November 1999, Hacklin issued Slickers's first formal written reprimand, which complained generally about Slickers's relationship with Amos and the Mayor. I App. 168. On January 7, 2000, Hacklin told Slickers that he was not going to reappoint him as Town Marshal due to his association with Brown and her family and former Mayor Dan Schmid. III App. 669. On January 26, Slickers was demoted to the rank of police officer and placed on a 60-day probation for reevaluation for his proposed reappointment as Town Marshal. I App. 174 (January 26, 2000 Letter).

Hacklin then issued two more written reprimands, one concerning Slickers's

alleged failure to distribute discharged summons letters, I App. 176 (January 28, 2000 Letter), and another regarding Slickers's alleged locking of dogs in jail rooms. I App. 170 (February 1, 2000 Letter). On March 24, 2000, Slickers was summarily terminated by Hacklin and Edmison without the issuing of a written notice of his termination. III App. 669 (Order on Motion for Summary Judgment). On April 4, 2000, eleven days after he was terminated, Slickers's appeal of his termination was rejected as untimely. I App. 178-79 (Affidavit of Town Attorney).

Slickers's federal court claims are summarized below in Part II-B.

## II

### *Plaintiffs' § 1983 claims*[3]

#### A

### *Brown's claims*

Plaintiff-Appellee Brown alleged her termination as Town Clerk by Defendant-Appellant Hacklin violated her constitutional rights. Brown says she was terminated without requisite procedural due process and in retaliation for her exercise of protected speech rights. Hacklin moved for summary judgment, claiming qualified immunity as to Brown's procedural due process claim on two grounds: (1) Brown was not entitled to a pre-termination hearing; and (2) Brown failed to avail herself of the available post-

---

[3]Although Plaintiffs' pleadings sought to state a claim against Amos, Plaintiffs construe their case as asserting no claim against him. Therefore, we do not address Amos's liability.

termination procedures.  Hacklin also claimed qualified immunity as to Brown's First Amendment claim on the ground that Brown's speech was not on a matter of public concern.  The district court denied these summary judgment motions and Hacklin now appeals.

The district court denied Hacklin's motion for summary judgment on qualified immunity grounds as to Brown's procedural due process and First Amendment claims.[4] In denying summary judgment for Hacklin as to Brown's procedural due process claim, the district court held that Brown was entitled to pre-termination procedure and that there was a genuine issue of material fact as to whether Brown's termination was undertaken in an emergency situation.  The court also held that the availability of post-termination procedure was insufficient to remedy the pretermination due process violation because Brown's procedural deprivation was foreseeable and pre-termination procedure was feasible.

With respect to the First Amendment claim, the district court held that Hacklin was not entitled to summary judgment because Brown's speech was on a matter of public concern.  Specifically, the court held that comments relating to Amos's misuse of the Town's credit card and Hacklin's harassment was speech on a matter of public concern because it was intended to "disclose a public official's malfeasance or wrongdoing."  The

---

[4]The district court also denied Hacklin summary judgment on Brown's breach of employment contract and assault claims but granted Hacklin summary judgment on Brown's substantive due process, equal protection, public policy/abuse of office, and intentional infliction of emotional distress claims.  These rulings are not at issue in this appeal.

court further held that Brown's interest in making these comments outweighed the Town's interest since Hacklin had not provided any evidence of an actual disruption of Town services as a result of Brown's speech.

For reasons given below, we agree with the district court's order denying summary judgment for Hacklin as to Brown's due process and First Amendment claims.

**B**

*Slickers's claims*

Plaintiff-Appellee Slickers alleged that his termination as a police officer by Defendants-Appellants Hacklin and Edmison violated his constitutional rights. More specifically, Slickers alleges he was terminated without the requisite procedural due process and in retaliation for his expression of protected speech. Hacklin and Edmison moved for summary judgment, claiming qualified immunity as to Slickers's procedural due process claim on the ground that Slickers was afforded procedural due process. Hacklin and Edmison also moved for summary judgment, asserting qualified immunity as to Slickers's First Amendment claim on the ground that Slickers's speech was not on a matter of public concern.

The district court denied Hacklin's and Edmison's motion for summary judgment on qualified immunity grounds as to Slickers's procedural due process and First

Amendment claims.[5]   With respect to the procedural due process claim, the district court held that summary judgment was inappropriate because there was a genuine issue of material fact as to whether Slickers was afforded pre-termination procedure.  With respect to the First Amendment claim, the district court held that summary judgment was inappropriate for the same reasons as it was inappropriate as to Brown's claim.

For reasons given below, we agree with the district court's order denying summary judgment for Hacklin and Edmison as to Slickers's due process and First Amendment claims.

### III

*Discussion*

Our jurisdiction of this appeal calls for a determination, under a *de novo* standard, whether there was a violation of clearly established federal law.  *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996).  This is so because, though we ordinarily have no jurisdiction to review a denial of summary judgment, *Garrett v. Stratman*, 254 F.3d 946, 951 (10th Cir. 2001), a denial of summary judgment on qualified immunity grounds, to the extent the denial rests upon an issue of law, is a narrow exception to that rule, *id.*

The defendants may prevail on a qualified immunity defense unless the plaintiffs

---

[5]The district court also denied Hacklin and Edmison summary judgment on Slickers's breach of employment contract claim and granted Hacklin and Edmison summary judgment on Slickers's substantive due process, equal protection, and public policy/abuse of office claims. These rulings are not at issue in this appeal.

can satisfy a "heavy two-part burden." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). First, the plaintiffs must show "that the defendant's actions violated a constitutional or statutory right." *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Second, the plaintiff "must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Gross*, 245 F.3d at 1155.

A right at issue is "clearly established" where "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Finn*, 249 F.3d at 1250 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be "clearly established," there must be a Supreme Court or a Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains. *Murrell v. School dist. No. 1, Denver,* 186 F.3d 1238, 1251 (10th Cir. 1999).

A

*Procedural due process*

The Due Process Clause of the Fourteenth Amendment protects a state employee who demonstrates a protected property interest in his or her employment and the employee cannot be fired without procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). A cognizable claim for deprivation of procedural due process requires the plaintiff to make two showings: (1) that he had a protected

property interest in his employment and (2) that he was deprived of this property interest without the requisite process.

A plaintiff can show he had a protected property interest in his employment only if he can show that "he has a legitimate claim of entitlement to continued employment." *Dickenson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988) (citation and internal quotation marks omitted). "Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Id.* Whether an employee has a property interest in her employment is determined under state law. *Id.* at 1438 n.5.

One way a plaintiff can show he was not afforded adequate process is by demonstrating that his firing was not "preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. "The key requirement is that the employee is entitled to a pre-termination opportunity to respond; more specifically, to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 627 (10th Cir. 1996) (citations and quotation marks omitted).

**1**

*Brown's case*

The district court denied Mayor Hacklin's motion for summary judgment asserted on qualified immunity grounds, holding that Brown had established she had a protected property interest in her employment, that her property interest was taken without procedural due process, and that the procedural due process right violated was clearly established so as to preclude qualified immunity. Specifically, the district court rejected Hacklin's argument that Brown was not entitled to procedural due process because she was fired in an emergency situation. Hacklin now appeals, arguing: (1) Brown was not entitled to procedural due process and (2) Brown failed to avail herself of the available post termination procedures.

Hacklin first argues that Brown was not denied procedural due process rights because she was fired in an "emergency situation." Appellant's Amended Opening Brief at 29. We do not have jurisdiction to hear this argument. As the Supreme Court made clear, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a "genuine" issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Here, while Hacklin argues Brown's firing occurred in an "emergency situation," Brown argues there was no such situation. Appellee's Brief at 40. Therefore, whether Brown was fired in an "emergency situation" is a question of fact we

do not have jurisdiction to consider on an interlocutory appeal from a denial of qualified immunity.

Hacklin also argues that Brown suffered no procedural due process violation because she did not avail herself of post-deprivation remedies. Specifically, Hacklin asserts that where a "procedurally adequate post-termination hearing results in reinstatement together with back pay for the temporary depravation (sic) of employment, a plaintiff cannot state a claim under § 1983." Appellants' Amended Opening Brief at 30. In support, Hacklin relies upon *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984). We disagree.

As both the Supreme Court and this court have made clear, "[T]he key requirement [of procedural due process] is that the employee is entitled to a *pre-termination* opportunity to respond; more specifically, to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Benavidez*, 101 F.3d at 627 (citations and quotation marks omitted) (emphasis added). This requirement of pre-termination procedure is excusable, under either *Parratt* or *Hudson*, only where such procedures are simply impracticable because the state cannot know when such deprivations will occur. *Hudson*, 468 U.S. at 533. A state cannot know when deprivations will occur where the deprivation is either negligent or the result of "random and unauthorized intentional conduct." *Id.* Neither is the case here.

Hacklin's termination of Brown was shown to be intentional. Therefore, his

- 17 -

failure to provide pre-termination procedure is excusable only if "the state cannot know when such deprivations will occur." *Id.* Here, the Personnel Rules specifically delegate to Hacklin the power and authority to terminate employees. I App. 331 (Personnel Rules, XII 2 C). Further, the Personnel Rules anticipate the risk of an erroneous termination decision by providing a procedure to challenge the termination before it occurs, *id.* at 331 (Personnel Rules, XII 2 C), and by supplying a procedure whereby an employee may be suspended, *id.* Therefore, the state has anticipated the deprivation of employment rights and provided pre-termination procedure, to which Brown is entitled.

In sum, Brown has shown that "a reasonable official would understand" that firing her without any pre-termination procedure and in a non-emergency situation violates her procedural due process rights. Accordingly, we find that Brown has satisfied her burden and affirm the district court's denial of summary judgment for Hacklin on this claim.

**2**

*Slickers's case*

The district court denied Hacklin and Edmison's motion for summary judgment based on qualified immunity grounds, holding that Slickers had established that he had a protected property interest in his employment, that his property interest was taken without procedural due process, and that the procedural due process right violated was clearly established so as to preclude qualified immunity. The district court held there was a

disputed issue of material fact as to whether Slickers had any pre-termination procedure and that the potential availability of post-deprivation procedures is inadequate to remedy a due process violation. Defendants appeal, arguing: (1) Slickers had no protected property interest in his employment, and (2) Slickers was afforded procedural due process.

Defendants first argue that Slickers had no property interest in his employment. Appellants' Amended Opening Brief at 20-2. Defendants assert that Slickers cannot demonstrate that he had a legitimate entitlement to reappointment to the position of Town Marshal after the initial one-year term had expired. *Id.* at 22. Defendants, however, did not raise this argument in the district court, but they do make this argument in their brief on appeal.

In their summary judgment motion, Defendants specifically conceded that Slickers had a protected property interest in his employment. I App. 67 (Brief in Support of Motion for Summary Judgment). In that motion, they state that "[f]or the purposes of this Motion only, Defendants will assume *arguendo* that the LaBarge Personnel Rules and Regulations provide Plaintiff Slickers with a property interest in his employment despite the fact that Town Ordinance 2.05.010 specifically states that the Town Marshal is appointed by the Mayor for a one (1) year term."[6] Therefore, the record reveals that the

[6]The closest Defendants came to arguing this issue to the district court was at the oral argument on Defendants' motion for summary judgment in the following exchange:
"The Court: So due process would apply to any effort to terminate him [Slickers] as a police officer?
Mr. Fowler: Not when he was ultimately terminated . . . he was put on a 60-day probation and was not reappointed as of January

- 19 -

Defendants did not contest Slickers' property interest in his employment to the district court.

"[A] federal appellate court does not consider an issue not passed upon below." *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992) (quoting *Singleton v. Wulff,* 428 U.S. 106, 120-121 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.")); *Hormel v. Helvering,* 312 U.S. 552, 556 (1941). Moreover, Defendants have not articulated a reason for us to depart from this rule. Accordingly, we will not now address the issue of whether Slickers had a protected property interest in his employment.

Second, Defendants argue that Slickers was given pre-termination process. Defendants claim that Slickers received notice of his performance deficiencies on multiple occasions, including being suspended twice. Appellants' Amended Opening Brief at 26. Shortly after Slickers was informed by Hacklin that he would not be reappointed Town Marshal, Slickers requested, and on January 26, 2000 received, a public hearing regarding his reappointment. *Id.* As a result of this hearing, Slickers was appointed as a Police Officer and placed on probation for 60 days pending a decision

---

2000." App. at 626 (Transcript of Motion Proceedings).
    "So to the extent he was enjoying a temporary employment status in effect, I'm not so sure pretermination – any pretermination process was required, but if there was any, he got what he was due with the repeated dialogue . . ."
Aplt. App. at 632, Transcript of Motion Proceedings (Argument of Mr. Fowler, defendants' counsel).

regarding whether to reappoint him as Town Marshal. *Id.* Having given Slickers an opportunity for a hearing, defendants contend there was no reason to believe that a further hearing was necessary prior to terminating Slickers's resulting probationary employment. *Id.* at 27.

Slickers contends he had no hearing. While he was suspended, with pay in April, 1999, pending investigation into allegations of misconduct made by a member of the public, he was subsequently exonerated and there is no evidence that this suspension carried with it any indication that Slickers's position as a police officer or Town Marshal was in jeopardy. App. at 457 (Lincoln County Attorney Letter).[7] There also does not appear to be any evidence to support defendants' conclusory statement that there was a second suspension, disciplinary or otherwise.

We do not have jurisdiction to hear this argument. We have jurisdiction to review interlocutory appeals from the denial of summary judgment only where the appeal "resolve[s] a dispute concerning an abstract issue of law relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was clearly established." *Behrens*, 516 U.S. at 313. Here, the essence of Defendants' argument is that the district court erred when it held Slickers could prove an essential element of his case–that he was not provided pre-termination notice and an opportunity to be heard. In other words,

---

[7] "From a prosecutor's standpoint, I feel comfortable working with Officer Slickers in the future and there has been nothing in this matter which has caused me concern with his past actions in the Town of LaBarge." App. at 457 (Lincoln County Attorney Letter).

Defendants do not argue that Slickers could have been terminated *without* notice and hearing but instead argue that Slickers *was* provided notice and hearing. This argument does not relate to "an abstract issue of law" and, therefore, cannot be reviewed in this appeal.

In sum, Defendants' first argument, that Slickers had no property interest in his employment, is precluded by Defendants' failure to raise the argument in the district court and, as explained, we lack jurisdiction to entertain Defendants' second argument. Accordingly, we affirm the district court's denial of summary judgment for Hacklin and Edmison on this claim of Slickers.

**B**

*Free speech*

The First Amendment prevents a State from conditioning public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142 (1983). Therefore, a "public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." *Dill v. City of Edmond*, 155 F.3d 1193, 1201-02 (10th Cir. 1998).

Whether an employee's speech is constitutionally protected is analyzed under a four part test. First, we decide whether the employees' speech involves matters of public concern. *Connick*, 461 U.S. at 142. Second, if so, we balance the employee's interest in

commenting on matters of public concern "against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Tp. High School Dist. 205*, 391 U.S. at 568. If the employee's interest outweighs the interest of the employer then the speech is protected. *Dill*, 155 F.3d at 1201 (citing *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998)). Third, if the balance weighs in favor of the employee, the employee then must show that the speech was a "'substantial factor or a motivating factor in the detrimental employment decision.'" *Id.* at 1202 (quoting *Gardentto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996)). Finally, if Plaintiff makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech. *Id.*

The first two steps in the above test are legal questions which the court examines to decide whether the speech is constitutionally protected. *Dill*, 155 F.3d at 1202. The second two steps concern causation and involve questions of fact, *id.*, which this court will not review on an interlocutory appeal of a denial of summary judgment sought on qualified immunity grounds. *Behrens*, 516 U.S. at 313.

Here, the district court denied the Defendants summary judgment on Plaintiffs' First Amendment claims, holding that the speech at issue–Amos' misuse of the Town's credit card and Hacklin's harassment of Brown–was a matter of public concern. The district court also held that the state's countervailing interest in "an effective workforce"

does not outweigh Plaintiff's interest in free speech. Defendants now appeal, arguing that neither Amos's misuse of the credit card nor Hacklin's harassment were matters of public concern. We disagree.

Speech on matters of public concern is speech of interest to the community, whether for social, political or other reasons. *Dill*, 155 F.3d at 1202. However, matters only of personal interest to government employees are not protected by the First Amendment. *Id.* at 1202 (citing *Connick*, 461 U.S. at 147). While speech concerning internal personnel disputes usually does not involve public concern, "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). In evaluating whether speech is protected, we must consider the "content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147.

In this case, we are convinced that both Amos's misuse of the credit card and Hacklin's harassment are matters of public concern. Amos's misuse of the credit card was speech that disclosed "evidence of corruption, impropriety, or other malfeasance on the part of [a] city official." *Conaway*, 853 F.2d at 796. While Amos was not an elected official, he was a public employee misusing public funds. Further, Amos's misuse of the credit card also implicates impropriety on the part of Hacklin, a city official. According to Plaintiffs, Hacklin was responsible for hiring Amos over the serious objections of

Slickers, the Town Marshal. Further, Hacklin told Brown that he would not "upset" Amos because he "was from an important family in town." III App. 684. Hacklin also explained that he would not "mess with them" and that Amos's father was his best friend and that as long as he was mayor, Amos would have a job. *Id.* Therefore, speech that exposes Amos's impropriety also exposes an improper system of patronage on the part of city officials. This is clearly a matter of public concern.

We are also convinced that Hacklin's harassment of Brown is a matter of public concern. Hacklin is accused of violent, frequent, and public threats against Brown made in an attempt to dissuade Brown from performing her duties as Town Clerk. Specifically, Hacklin threatened Brown after she refused to sign Town checks during the period when her bond had not been renewed and Thorrington, member of the WAMCAT, advised her not to sign. III App. 683. Hacklin also threatened Brown after she discovered and reported Amos's misuse of the town credit card. *Id.* at 684. Therefore, Hacklin's harassment is evidence of both individual malfeasance by a city official, i.e., threats of violence, and evidence of corruption, i.e., preventing other city officials from doing their job. This is clearly a matter of public concern. *Conaway*, 853 F.2d at 796.

The conclusion that Amos's misuse of the credit card and Hacklin's harassment are matters of public concern is further strengthened by the fact that both issues were the subject of both public debate and a newspaper article. *See Schalk v. Gallemore*, 906 F.2d 491, 496 (finding that news articles printed in a local paper supported this court's

- 25 -

assessment that the plaintiff's concerns were a matter of public concern). The credit card issue was discussed within the EMS, among council members in executive session, and in public meetings of the Town Council. III App. 684-85. The harassment issue was also discussed in the public meeting of the Town Council at which Brown was fired by Hacklin. II App. 390. Also, the Big Piney *Roundup* published an article discussing both the credit card issue and the harassment charges, although it did not mention the names of the individuals involved. II App. 462 ("LaBarge under scrutiny, DCI investigating town official and police department member . . . 'We received two separate requests for investigations . . . one for the investigation of broad allegations involving payment for internet services . . . fraud allegations involving a member of the police department . . . (and) the second involved a menacing threat allegation against one of the LaBarge town officials.'" *Roundup*, Vol. 94, Issue 4, October 28, 1999).

In sum, we hold that both Amos's misuse of the credit card and Hacklin's harassment are matters of public concern. We further feel that these matters were so clearly of public concern that "a reasonable official would understand" they were. *Conaway*, 853 F.2d at 796; *Finn*, 249 F.3d at 1250. As such, given the Supreme Court's holding in *Connick*, 461 U.S. at 142, and our holding in *Dill*, 155 F.3d at 1201-02, "a reasonable official would understand" that firing Plaintiffs in retaliation for speaking about misuse of a credit card by a city employee who was hired at the behest of the Mayor and about public threats of violence by the Mayor in an attempt to prevent another city

official from performing her job violated Plaintiffs' First Amendment Rights. Accordingly, we affirm the district court's denial of summary judgment for Hacklin and Edmison on this claim.

## III

### *Conclusion*

For the reasons detailed above, we AFFIRM the district court's denial of summary judgment on qualified immunity grounds for defendant Hacklin as to Brown's and Slickers's procedural due process and First Amendment claims. We also AFFIRM the district court's denial of summary judgment on qualified immunity grounds for defendant Edmison in respect to Slickers's procedural due process and First Amendment claims. Finally, we DISMISS Defendants' appeal as to the issue of whether Brown was fired in an emergency situation and whether Slickers was afforded pretermination procedure for lack of jurisdiction. The cause is remanded for further proceedings in accord with this opinion.

**IT IS SO ORDERED.**

ENTERED FOR THE COURT


William J. Holloway, Jr.                    .
Circuit Judge